637 A.2d 1313

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph Louis YOUNG a/k/a Yusuf Ali, Appellant.**

Supreme Court of Pennsylvania.

Reargued Dec. 9, 1992.

Decided Nov. 5, 1993.

58

Stephen G. Heckman, Norristown, for appellant.

Hugh J. Burns, Philadelphia Dist. Atty., amicus curiae.

Mary MacNeil Killinger, Asst. Dist. Atty., Patricia E. Coonahan, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

***OPINION***

MONTEMURO, Justice.

This is a direct appeal after remand from the judgment of sentence of death imposed by the Court of Common Pleas of Montgomery County following a resentencing hearing.

On July 10, 1987 a jury convicted Joseph Louis Young of two counts of murder in the first degree for the stabbing deaths of Dr. Ismail al Faruqui and his wife, Lois al Faruqui, in their Wyncote home.[1] A separate sentencing hearing was held and the jury returned a verdict of death on each of the two murder convictions. After denial of post-trial motions and formal sentencing, Young filed a timely appeal with this court. We affirmed the convictions, but remanded for resentencing

1. Appellant was also convicted of attempted murder, burglary, criminal trespass, and aggravated assault. None of those convictions are the subject of this appeal.

pursuant to 42 Pa.Cons.Stat.Ann. § 9711(h)(4) (Purdon 1992)[2] because the verdict slip provided to the jury in the original sentencing hearing violated the holding of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). At the resentencing hearing the jury again returned a verdict of death for each murder conviction. They specifically found the existence of four aggravating circumstances and one mitigating circumstance, and determined that the aggravating circumstances outweighed the mitigating circumstance.[3] The sentencing court subsequently denied all post-trial motions and formally imposed the sentence of death. This direct appeal followed. On appeal, Young raises a number of issues which we will address seriatim.

## A. Federal and State Ex Post Facto Claims

Appellant raises the issue of whether a statute which was passed after appellant's crime and which required a remand for a resentencing hearing in appellant's case violates the Ex Post Facto Clause of the United States Constitution or the Pennsylvania Constitution. We hold that it does not.

Young committed the instant murders on May 27, 1986. At that time, section 1102 of the Crimes Codes, 18 Pa.Cons.Stat. Ann. § 101 et seq. (Purdon 1983), fixed the punishment for

2. The facts of this tragic case are delineated in this court's opinion in *Commonwealth v. Young,* 524 Pa. 373, 572 A.2d 1217 (1990).

3. The aggravating circumstances found were the following:

(1) the defendant committed a killing while in the perpetration of a felony, 42 Pa.Cons.Stat.Ann. § 9711(d)(6),
(2) in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.Cons.Stat.Ann. § 9711(d)(7),
(3) the defendant has a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.Cons.Stat.Ann. § 9711(d)(9), and
(4) the defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable, 42 Pa.Cons.Stat.Ann. § 9711(d)(10).

The mitigating circumstance found was that the defendant was under the influence of extreme mental or emotional disturbance. 42 Pa.Cons. Stat.Ann. § 9711(e)(2).

first-degree murder at death or life imprisonment. That substantive law continues in effect.

However, the law which specifies the procedure to be followed by this court in reviewing a death sentence has been changed since Young's conviction, and it is the application of the amended procedure to appellant's case which serves as the basis for his claim. At the time Young was convicted and originally sentenced to death, § 9711(h) of the Sentencing Code, 42 Pa.Cons.Stat.Ann. § 9701 et seq., provided for the automatic imposition of a sentence of life imprisonment upon remand where a death sentence was vacated but the underlying conviction affirmed.[4] While Young's appeal from the death sentence was pending, the Legislature amended § 9711(h). The amendment allowed the court to remand for a new sentencing hearing rather than automatic imposition of a life sentence, except where the sentence was vacated either because the sentence was disproportionate or the evidence insufficient to support any aggravating circumstances.[5] This meant that a defendant like Young, who had his original death sentence vacated for a *Mills* violation, could again be exposed to a possible death sentence at a resentencing hearing. The comment following the statute expressly stated that the

4.  At the time of appellant's original sentencing, section 9711(h) provided, in pertinent part:

    (2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.

5.  Section 9711(h), as amended, now reads in pertinent part:

    (2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for further proceedings as provided in paragraph (4).

    .    .    .    .    .

    (4) If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence or because the sentence of death is disproportionate to the penalty imposed in similar cases, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing pursuant to subsection (a) through (g).

    As amended 1988, Dec. 21, P.L. 1862, No. 179, § 2, imd. effective.

amendment applied to cases then on appeal.[6] Since Young's original appeal was pending on December 21, 1988, the date on which the amendment became effective, it clearly applied to his case and we correctly remanded for a resentencing hearing.

The prohibition against the enactment of ex post facto laws dates back to the earliest days of our nation when it was written into the Constitution of the United States and the Pennsylvania Constitution.[7] In 1798, the Supreme Court defined the meaning of an ex post facto law as:

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that

6. The comment read in pertinent part:

> Section 3 of Act 1988, Dec. 21, P.L. 1862, No. 179, provides in part that section 2 (amending subsec. (h) of this section) shall apply to all criminal offenses committed on or after the effective date of this act and to all criminal cases and appeals pending on the effective date of this act.

7. As correctly noted by the Commonwealth, the same pre-revolutionary-war concerns shaped the ex post facto provision of the constitutions of Pennsylvania and the United States. *See Calder v. Bull,* 3 U.S. (3 Dall.) 386, 388–89, 1 L.Ed. 648, 649–50 (1798) (opinion of Chase, J.). The ex post facto clauses of both constitutions are virtually identical and the standards applied to determine an ex post facto violation under the Pennsylvania Constitution and the United States Constitution are comparable. *See Commonwealth v. Duffy,* 96 Pa. 506 (1881); *Commonwealth v. Kalck,* 239 Pa. 533, 87 A. 61 (1913), *Commonwealth v. Story,* 497 Pa. 273, 440 A.2d 488 (1981) (plurality) (Larsen, J., joined by Flaherty, J. and Kauffman, J., dissenting); *Commonwealth v. Hoetzel,* 284 Pa.Super. 623, 426 A.2d 669 (1981); *Commonwealth v. McElhenny,* 329 Pa.Super. 240, 478 A.2d 447 (1984). As our interpretation of the state constitutional prohibition against ex post facto laws has been consistent with that of the United States Supreme Court's interpretation of the federal prohibition, the analysis of appellant's federal ex post facto claim disposes of his state claim as well.

Article I, § 10 of the United States Constitution provides that "[n]o state shall ... pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts ...".

Article 9, § 17 of Pennsylvania's Constitution of 1790 provided that "No ex post facto law nor any law impairing contracts shall be made." In 1874, this provision was amended to its present form, which reads: "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const. art. 1, § 17.

*aggravates a crime,* or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offense, *in order to convict the offender.*

*Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798) (opinion of Chase, J.) (emphasis in original).

As recently as 1990, in *Collins v. Youngblood,* 497 U.S. 37, 40–51, 110 S.Ct. 2715, 2718–2724, 111 L.Ed.2d 30, 38–44 (1990), the Court reaffirmed this definition of the term "ex post facto" and held that a more expansive definition is unjustified. It noted that the Constitution does not prohibit every retrospective law that alters the situation of a party to his disadvantage. *Id.* at 50, 110 S.Ct. at 2723, 111 L.Ed.2d at 43–44. Rather, only those retrospective laws encompassed by the *Calder* categories violate the prohibition against ex post facto legislation. *Id.*

Appellant argues that the statutory amendment, as applied to him, constitutes an increase in the quantum of punishment for the crime of first-degree murder. In addition, he contends that retroactive application of the amendment has deprived him of the right to have his death sentence automatically modified to life imprisonment and the right not to face the possibility of a death sentence. He maintains that this change in the law constitutes a deprivation of a "substantial right" under law existing at the time of the crime and, as such, is constitutionally impermissible. Neither of these contentions has merit.

At the time appellant committed these crimes, the law provided for imposition of either the death penalty or a sentence of life imprisonment upon conviction. 18 Pa.Cons. Stat.Ann. § 1102. Following enactment of the instant amendment, the potential punishment for first-degree murder remained the same. Therefore, appellant faced exactly the same potential punishment at both his 1987 and 1990 sentenc-

ing hearings. While the statutory change did allow the Commonwealth to seek once again the death penalty, thereby eliminating a procedural windfall, it did not increase the potential punishment "that the law annexed to the crime when committed." Thus, the core concern of the Ex Post Facto Clause is not implicated.

Nor has appellant lost any "substantial right" because his case was remanded for resentencing. In *Collins*, the Supreme Court noted that the reference in prior cases to "substantial protections" and "personal rights" had imported confusion into the interpretation of the Ex Post Facto Clause, *Id.* at 45, 110 S.Ct. at 2720, 111 L.Ed.2d at 40, and should not be read so as to enlarge the *Calder* categories beyond their meaning at the time of the adoption of the Constitution. *Id.* at 45–51, 110 S.Ct. at 2720–2723, 111 L.Ed.2d at 41–44. Only those laws which disadvantage a defendant *and* fall within a *Calder* category are ex post facto laws and constitutionally infirm. *Id.*

Applying this reasoning, we conclude that Section 9711(h) as amended did not deprive appellant of any substantial right protected by the Ex Post Facto Clause. It did not change the elements of the offense or the ultimate facts necessary to establish guilt. Nor did it increase the punishment which the law annexed to Young's crimes when committed. Finally, it did not alter the legal rules of evidence, so as to require less or different testimony than the law required at the time of the commission of the crimes in order to sentence appellant to death. In seeking the death penalty, the Commonwealth was once again required to establish beyond a reasonable doubt the existence of aggravating circumstances sufficient to outweigh any mitigating factors. In challenging application of the amended law to him, appellant does not complain that § 9711(h) denied him any procedural protections relevant to the determination of the appropriate sentence. Nor does he complain that he was deprived of any avenue of review for correcting sentencing errors. Indeed, it was precisely such a review which prompted us to vacate appellant's first death sentence and order a new hearing. What appellant is really

complaining about is the loss of a procedural windfall that he would have enjoyed had the law not been amended. When viewed from the standpoint of the date the offense was committed, this mere possibility of a windfall life sentence, premised on the occurrence of a sentencing error, is not the type of procedural right the Ex Post Facto Clause seeks to preserve.

Appellant's reliance on *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) is misplaced. In *Miller,* the Court held that retroactive application of revised sentencing guidelines, which resulted in increased rates and length of incarceration, violated the Ex Post Facto Clause. In the instant case, as has already been noted, there was no such increase in potential sentence.[8]

8. The dissent, in concluding that § 9711(h) is an ex post facto law, seems to regard the remand process as a pivotal event capable of transmogrifying both the offense and the permissible penalty. It continually emphasizes that the "potential maximum sentence on remand has been increased," ignoring that the ex post facto prohibition does not attach to specific procedural stages in a case. What is forbidden is to change "the law annexed to the crime when committed," not to bar reimposition of sentence on remand. The notion that return to the sentencing court is a determinative factor in finding impermissible retroactivity, confuses substance and procedure. The substance, as we have already explained, consists of the fact that the penalties legislatively designated for first degree homicide, were at the time of appellant's initial sentencing, and continue to be, at the time of remand, and now, either life imprisonment or death. The section in question introduced no alteration to these potential sentences, merely permitting the reimposition of a sentence already legitimately imposed. If the sentence had not been legitimately imposed, that is, was without sufficient evidence supporting aggravating circumstances or was disproportionate to the sentence imposed in similar cases, then the statute provides that the sentence be altered to life imprisonment. Thus only the protocol involved in pronouncement was affected by the statutory change, since no decisions as to substance, that is, which sentence was appropriate, was predetermined.

The dissent has based its argument, as does appellant, on *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). However, the distinction between this case and *Miller* is readily apparent. In *Miller* the sentence imposed on the appellant was increased by several years, from a presumptive sentence of 3½ to 4½ years to the 7 year term actually imposed, under the provisions of a retroactive statute. The statute increased the severity of the penalty pursuant to a point system which also increased the points to be assigned to the appellant's particular crime. These changes did not occur until well after the

### B. Jury Selection

Appellant's next contention is that the sentencing court erred in allowing the prosecutor to use a peremptory challenge to exclude prospective juror Victorine Moody. Appellant argues that the Commonwealth exercised this peremptory challenge solely because both Ms. Moody and appellant are black, and that allowing the peremptory challenge was a violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree.

In *Batson,* the United States Supreme Court enunciated the test to determine if the Commonwealth has engaged in purposeful discrimination in selection of the petit jury.

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.... Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... [Once the prosecutor has articulated a neutral explanation,] the trial court then have the duty to determine if the defendant has established purposeful discrimination.

476 U.S. at 96–98, 106 S.Ct. at 1722–1724, 90 L.Ed.2d at 87–89 (citations omitted). The trial court's determination as to discriminatory intent is a finding of fact and must be accorded great deference on appeal. *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395, 408 (1991).

crime had been committed, and the enhanced penalty was imposed before the effective date of the statute. Herein, appellant's original sentence was merely pronounced once again.

There were only three black individuals in the entire group of veniremen available for appellant's resentencing hearing. One was stricken for cause by agreement of counsel, and the second was accepted and ultimately served on the jury. The third, Ms. Moody, was challenged for cause but the challenge was rejected. The Commonwealth then exercised a peremptory challenge and the court asked for a reason for the challenge. As noted by the trial judge, he did not find that a prima facie case of discrimination had been established; he asked for a reason in the interest of developing a complete record. The District Attorney offered several reasons for the challenge, including his doubts about Ms. Moody's ability to be impartial, her ability to follow instructions, and the seriousness with which she viewed the task of serving on the jury. As explained by the District Attorney, Ms. Moody's brother had been successfully prosecuted for burglary by his office that year. Although Ms. Moody denied that the conviction would affect her ability to remain unbiased, the Commonwealth pointed out that she had been less than candid in her response to questioning. She did not raise her hand when the jury pool was asked "whether or not either you or any member of your family was convicted of a crime." In addition, the prosecutor noted that Ms. Moody's facial expressions and laughter in response to certain questions asked of the jury pool caused him to question her fitness to serve. Based on these facts, we simply cannot conclude that the trial court's *Batson* ruling is erroneous. Appellant has not established any facts and circumstances which raise an inference of purposeful discrimination.

Appellant argues that the Commonwealth's failure to exclude a white prospective juror on the same basis is evidence of a racially motivated selection process. We do not agree. The juror, Bruce Jarvis, had pled guilty to a misdemeanor offense and paid a fine thirteen years before the instant case. Unlike Ms. Moody's brother, Mr. Jarvis had no contact with the prosecutor's office. The Commonwealth was entitled to believe Mr. Jarvis when he stated that his own experience would not affect his ability to be an impartial juror. Accep-

tance of Mr. Jarvis as a juror does not establish any evidence of racial discrimination in the selection of appellant's jury.

Appellant has raised a second issue related to jury selection. He contends that the sentencing court violated his state constitutional right to a jury representing a fair cross-section of the community when it allowed the Commonwealth to exclude prospective jurors who indicated some difficulty in imposing the death penalty. This issue has been addressed and rejected in our prior decisions, including appellant's first appeal. *Commonwealth v. Young,* 524 Pa. at 383, 572 A.2d at 1222; *Commonwealth v. DeHart,* 512 Pa. 235, 249–52, 516 A.2d 656, 663–665 (1986).

**C. Evidence of Aggravating Circumstances**

At the resentencing hearing, the Commonwealth introduced the testimony of three witnesses to establish that appellant has a significant history of felony convictions involving the use or threat of violence to another person.[9] Such a history, once established, is an aggravating factor which must be considered by the jury in determining sentence. 42 Pa. Cons.Stat.Ann. §§ 9711(c)(1)(iv), (d)(9). While appellant recognizes that the sentencing statute expressly provides for evidence of such a history, he contends that the in-court testimony of these particular witnesses was so irrelevant, inflammatory and prejudicial that it deprived him of a fair trial. He argues that the sentencing court should have limited the evidence to introduction of a certified record of conviction and the prosecutor's brief summary of the facts surrounding the prior convictions. This claim is meritless.

As noted by Justice Flaherty in *Commonwealth v. Beasley,* 505 Pa. 279, 289, 479 A.2d 460, 465 (1984):

9. The witnesses included Sylvia Young Bailey, the ex-wife of the appellant, who testified briefly about the appellant's conviction for shooting her in the head in October of 1986. Another victim, Junior Brown Henderson, related the appellant's conviction for shooting him in 1976. A third witness, a former Philadelphia police officer, testified that the appellant was convicted of aggravated assault and robbery of an elderly man and woman in 1972.

> In this Commonwealth, sentencing has long been regarded as having at its core a function of character analysis, and the central idea of the present sentencing statute is to allow a jury to take into account such relevant information, bearing upon a defendant's character and record, as is applicable to the task of considering the enumerated aggravating circumstances. Consideration of prior "convictions" was not intended to be a meaningless and abstract ritual, but rather a process through which a jury would gain considerable insight into a defendant's character. The nature of an offense, as ascertained through examination of the circumstances concomitant to its commission, has much bearing upon the character of a defendant, and, indeed, without reference to those facts and circumstances, consideration of "convictions" would be a hollow process, yielding far less information about a defendant's character than is relevant.
>
> Convictions are defined by the essential and necessary facts upon which they are based, and judgments of sentence flow naturally from, and form an integral part of, those convictions. Thus, reason impels that the construction of the term "convictions" in 42 Pa.C.S.A. § 9711(d)(9) be such as to permit consideration of the essential and necessary facts pertaining to the convictions, including the circumstances of the crimes and the sentences imposed.

*Beasley* makes it clear that a sentencing court does not err when it refuses to limit evidence of this particular aggravating circumstance to a certified record and sanitized summary of the circumstances of the prior crimes. The jury is entitled to know more than the mere fact of conviction. A review of the record reveals that the witnesses' testimony was confined to the facts necessary and essential to understanding the nature of the offense and appellant's character. The testimony was brief and non-inflammatory. As such, it served precisely the function for which it was intended; the court did not err in admitting the evidence.

Appellant's second claim is that it was error for the prosecutor to introduce evidence of the two prior felony convictions for aggravated assault and/or attempted murder

which involved no burglaries. He posits that, because he was convicted of committing first-degree murder while in the perpetration of a burglary in the instant case, only those prior crimes of violence committed during the course of a burglary are similar enough to the instant case to be considered relevant or "significant". This argument is ridiculous.

Section 9711(d)(9) looks to evidence of a "significant history of felony convictions involving the use or threat of violence to the person". The statute does not impose any test of "similarity" beyond requiring that the felony conviction be one involving the use or threat of violence. In this case, all three witnesses testified about appellant's use of violence against another person. Such testimony is highly relevant in evaluating appellant's character, even if the prior crimes are not mirror images of those committed in the instant case.

Appellant's assertion that *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985) (plurality opinion), *cert. denied,* 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986), supports his claim is simply incorrect; there was no holding in *Holcomb* that prior convictions have to be "carbon copies" to be admissible. As noted by Justice Larsen in his concurring and dissenting opinion in *Holcomb,* appellant's interpretation would lead to the absurd result of benefiting the creative criminal who has varied his *modus operandi.* 508 Pa. at 488–89, 498 A.2d at 866. The evidence presented by these witnesses demonstrated that appellant has a predilection for crimes of violence; as such, it was admissible to establish the relevant aggravating circumstance.

Third, appellant contends that it was error to admit the evidence of his conviction for aggravated assault arising out of the shooting of his ex-wife, because both the offense and conviction occurred after commission of the instant murders. There is no merit to this argument. We have consistently held that "[c]onvictions obtained before or after the offense at issue are relevant to the question of whether a defendant has a significant history of prior criminal convictions." *Commonwealth v. Haag,* 522 Pa. 388, 407, 562 A.2d 289, 299 (1989).

Therefore, convictions arising from crimes committed after the subject offense may be introduced at the sentencing stage.

Appellant's fourth claim is that the sentencing court erred when it admitted the testimony of Detective Lieutenant John Durante and Tayma al Faruqui, a daughter of the victims who was at home during the murders. He argues that their testimony was irrelevant and prejudicial. We disagree.

In the sentencing hearing, the court may admit evidence as to any matter that it deems relevant and admissible on the question of the sentence to be imposed, and the evidence shall include matters relating to any of the aggravating or mitigating circumstances. 42 Pa.Cons.Stat.Ann. § 9711(a)(2). The record indicates that the challenged testimony was relevant to demonstrate that the appellant inflicted injuries on Anmar el Zein, another of the Faruqi daughters, which placed her at grave risk of death. 42 Pa.Cons.Stat.Ann. § 9711(d)(7). As such, it was clearly admissible. In addition, Detective Durante's description of the crime scene established other facts and circumstances of the crime to be considered in fixing sentence. His testimony regarding discovery of a glove, which bore appellant's fingerprint, was also admissible to cast doubt on the defense claim that, at the time of the murders, appellant could not fully appreciate the criminality of his actions.

The final claim of error pertaining to the proof of aggravating circumstances relates to photographs which were admitted into evidence. Appellant argues that the photographs were irrelevant to the issue of sentencing and unduly inflamed the passion of the jury.

Photographs of a crime scene are admissible if they are relevant, can assist the jury in understanding the facts of the case, and would not unduly inflame the passions of the jury. *Commonwealth v. Duffey,* 519 Pa. 348, 548 A.2d 1178 (1988); *Commonwealth v. Garcia,* 505 Pa. 304, 479 A.2d 473 (1984). The fact that blood is visible does not necessarily compel a finding that a photograph is inflammatory. *Commonwealth v. Young,* 524 Pa. at 390, 572 A.2d at 1225. These general rules regarding admissibility of photographs are as

applicable to the sentencing hearing as they are to the guilt phase of trial. See *Commonwealth v. Marshall,* 523 Pa. 556, 572, 568 A.2d 590, 598 (1989).

The series of black and white photographs in question detailed the murder scene and served to familiarize the jury with the facts and circumstances of the crime. Two of the photographs showed the blood-stained telephone used by Anmar el Zein to call for help during the murders. These pictures, along with two others which depict slash marks appellant made on a door during his attack on Ms. el Zein, were particularly relevant to establish the prosecution's contention that appellant placed Anmar el Zein at grave risk of death. While unpleasant to view, none of the photographs were unduly prejudicial. We note as well that the trial judge took great care to insure that this evidence was presented to the jury for only a brief period of time, accompanied by an appropriate cautionary instruction. No photographs were sent out with the jury during deliberations. This claim fails.

**D. Evidence of Mitigating Circumstances**

During the sentencing hearing appellant sought to introduce into evidence letters he wrote to Sister Joan Chepiga, a Roman Catholic nun with the Criminal Justice Ministry of Catholic Social Services. Sister Chepiga testified on appellant's behalf at the hearing. Her testimony was in no way restricted, placed evidence of appellant's character before the jury, and is not now in contention. Appellant's claim is limited to the issue of whether it was an abuse of discretion for the trial court to refuse to admit the packet of letters into evidence.

A defendant may present evidence of mitigating circumstances at the sentencing hearing, but the evidence must be relevant and admissible. 42 Pa.Cons.Stat.Ann. § 9711(a)(2). Implicit in the fact that the defendant bears the burden of proving mitigating circumstances is the understanding that the jury must assess the credibility of such evidence. *Commonwealth v. Abu-Jamal,* 521 Pa. 188, 213, 555 A.2d 846, 858 (1989). In order for this to occur, the Commonwealth must

have the opportunity "to challenge the veracity of facts asserted and the credibility of the person asserting those facts, whether that person is a witness or the defendant." *Id.*

The letters in issue constitute unsworn statements by appellant offered for their truth and, as such, are hearsay. Since appellant declined to take the stand in his own defense at the hearing, the prosecution would have had no opportunity to cross-examine him about the statements contained in the letters. The trial court correctly noted that to allow the letters into evidence would have been tantamount to granting appellant the right of allocution. Allocution is a common law right which, in capital cases, has been abrogated and replaced by the statutory law which specifies the sentencing procedure for first-degree murder. *Id.* at 212, 555 A.2d at 857. The court did not err in excluding the letters.

Appellant's second claim is that the sentencing court erred in refusing his pre-trial request that the judge instruct the jury that it is free to impose a sentence of life for any reason whatsoever. Rather than give the requested instruction, the court quoted directly the relevant mitigating circumstance provided by the sentencing statute, i.e. that the jury may consider "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.Cons.Stat.Ann. § 9711(e)(8). The sentencing court did not err in refusing the requested instruction, since such an instruction would inject arbitrariness and capriciousness into the capital sentencing process. In the absence of a standard to guide the jury's expression of mercy and leniency, there would be no guarantee of consistency in sentencing across cases. Appellant was allowed to present and argue any evidence which was relevant and admissible in an attempt to convince the jury that the death sentence should not be imposed in his case. That is all that is constitutionally required. See *Commonwealth v. Holcomb,* 508 Pa. at 468–73, 498 A.2d at 855–58; *Commonwealth v. Peterkin,* 511 Pa. 299, 326–28, 513 A.2d 373, 387–88 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (death penalty statute,

which permits consideration of a broad range of mitigating evidence, including evidence supportive of mercy and leniency, is not unconstitutional on the grounds that it precludes an absolute mercy verdict).

## E. Cross–Examination of Expert Witnesses for the Defense

Appellant argues that the sentencing court erred in refusing to declare a mistrial because of the prosecutor's alleged improper questioning of Dr. Gerald Cooke and Dr. Robert Sadoff during cross-examination. This claim has no merit. When viewed in context, none of the prosecutor's questions or comments so inflamed the jury that it could not objectively decide the case.

During direct examination, Dr. Cooke stated that he had testified at many trials, sometimes for the defense and sometimes for the prosecution. The prosecution then brought out on cross that Dr. Cooke frequently testified for the defense in capital cases and only rarely testified for the prosecution. Such testimony was relevant and admissible on the issue of whether Dr. Cooke held any bias against the prosecution. At no time did the prosecutor ask about the actual penalty imposed in the other death penalty cases in which Dr. Cooke testified; nor did the witness offer such information. The prosecutor did mention the name of one of the prior cases in which the death penalty was imposed. Appellant now claims that this mere mention was prejudicial enough to warrant a mistrial because some juror might have been aware that the death penalty was imposed in that case and might have found Dr. Cooke's testimony less persuasive on that basis. Such speculation does not provide the basis for a mistrial and the sentencing court correctly denied the request.

At one point during the questioning of Dr. Sadoff, the prosecutor suggested that appellant tried to kill Dr. Faruqi's daughter because she was a witness. Defense counsel objected and the court sustained the objection and issued a cautionary instruction to disregard the prosecution's speculation.

Despite appellant's contention to the contrary, the comment did not create such prejudice as to warrant a mistrial.

Appellant's second complaint in regard to the questioning of Dr. Sadoff involved the prosecutor's attempt to elicit testimony to counter specific statements made by the witness on direct examination. Dr. Sadoff had testified on direct that it was his opinion that appellant committed the murders while acting under extreme emotional or mental disturbance and did not fully appreciate the criminality of his actions. He stated that the fact that the appellant had carelessly discarded evidence near the crime scene did not change this opinion. On cross-examination, the prosecutor attempted to show that a criminal might leave evidence where it could be readily discovered without necessarily suffering from diminished capacity. He offered as an example the contract killer, who sometimes deliberately leaves such evidence while fully understanding the criminality of his action. When viewed in context, the prosecutor's example simply does not create the prejudice claimed by the defense and certainly does not warrant a mistrial.

**F. The Prosecutor's Closing Argument**

Appellant contends that the prosecutor made errors during the course of his summation that warranted a mistrial. Specifically, he argues that it was error for the prosecutor to (1) comment about appellant's failed defense in his prior trial for shooting his ex-wife, (2) use a diagram to highlight the fact that appellant had six prior convictions, when those convictions occurred on only four separate occasions, (3) comment on the legislative purpose underlying the aggravating circumstance of killing during the perpetration of a felony, and (4) inadvertently read three sentences of appellant's prior testimony from the guilt phase of trial without formally entering it into evidence during the hearing.

It is well-settled that, during the sentencing phase of a capital case, the Commonwealth must be afforded reasonable latitude in arguing its position to the jury and may

employ oratorical flare in arguing for the death penalty. *Commonwealth v. Basemore,* 525 Pa. 512, 528, 582 A.2d 861, 869 (1990). Improper comments will not be grounds for a mistrial unless their unavoidable effect was to prejudice the jury so that it was unable to weigh the evidence objectively and render a true verdict. *Commonwealth v. Strong,* 522 Pa. 445, 563 A.2d 479 (1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 775.

After thoroughly reviewing appellant's claims, we find nothing which would merit relief. The remark about the failed defense was essentially fair comment on testimony that appellant had given different explanations at various times as to why he shot his ex-wife, and argument that appellant was capable of fabricating a defense. The diagram of the six convictions was also fair comment on prior testimony that appellant had in fact been convicted of six separate felonies. In regard to the remarks concerning the aggravating circumstance, we note that, while it is properly the role of the court to instruct the jury on the law, the prosecutor did not misstate the law. As such, his comments did not mislead the jury and provide no basis for a mistrial. Likewise, the prosecutor's comment on admissible but inadvertently omitted evidence does not warrant a mistrial. While error, it was harmless when viewed in the context in which it occurred. In addition, the court issued a cautionary instruction to the jury to disregard those few sentences not formally entered into evidence. No prejudice resulted.

### G. The Verdict Slip

Appellant's last claim is that the court erred in refusing his request that each juror be directed to fill out a separate penalty verdict slip in addition to the official master verdict slip. This claim is meritless. Neither the holding in *Mills* nor any other case requires separate verdict slips. The sentencing court properly instructed the jury in accordance with *Mills.* That is all that is required.

Finally, we have thoroughly reviewed the record and conclude that the evidence supports the findings of aggravating

circumstances made by the jury. We have also conducted the proportionality review required by 42 Pa.Cons.Stat.Ann. § 9711(h)(3)(iii) and find no basis to conclude that the penalty imposed is excessive or disproportionate to the sentence imposed in similar cases. *See Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–08 (1984). Likewise, the record does not provide any grounds for us to find that the sentences of death were the product of "passion, prejudice or any other arbitrary factor". See 42 Pa.Cons.Stat.Ann. § 9711(h)(3)(i). Since the sentences of death in this case comply with the concerns in the statute, the sentences must be affirmed.

Judgments of sentence affirmed.[10]

LARSEN, J., did not participate in the decision of this case.

CAPPY, J., files a concurring and dissenting opinion.

CAPPY, Justice, concurring and dissenting.

With the exception of Section A relating to ex post facto claims, I concur fully with Mr. Justice Montemuro's scholarly and well-reasoned majority opinion.

I do not and cannot, however, concur with the analysis contained in the opinion as it relates to the appellant's ex post facto claims. The majority contends that the General Assembly's amendment of § 9711(h) worked only a procedural change in the law, that it did not work an increase in appellant's "potential sentence." This conclusion will, of course, come as some surprise to appellant who now faces a sentence of death rather than a sentence of life imprisonment as a direct result of this supposed "procedural" statutory change.[1]

10. The Prothonotary is directed to transmit a full and complete record of the trial, sentencing hearings, imposition of sentence, and review by the Court to the Governor. 42 Pa.Cons.Stat.Ann. § 9711(i).

1. Indeed, had this Court heard appellant's appeal more expeditiously, he would have had his case remanded for resentencing before the legislative change in the statute and *could not have been* sentenced to death. Appellant filed his appeal in this Court on August 18, 1988. The General Assembly's amendment to § 9711(h) did not take effect

In fact, it appears to me quite clear that this legislative amendment of § 9711(h) did dramatically "change the punishment," *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798), that a defendant could receive in the event that his or her sentence of death was vacated by this Court, as occurred in appellant's case.

Moreover, the majority opinion has misread the applicability of the focal and recent United States Supreme Court precedent in this area, *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). The majority concludes that appellant's reliance on *Miller* is "misplaced." The majority states that all the United States Supreme Court concluded in that case was that "retroactive application of revised sentencing guidelines, which resulted in increased rates and length of incarceration, violated the Ex Post Facto Clause" whereas "[i]n the instant case,... there was no such increase in potential sentence." This reading of *Miller* is incomplete and incorrect. In fact, the *Miller* decision is controlling. What has happened in the instant case is that the potential maximum sentence on remand has been increased from life to death (just as the potential maximum sentence was increased in *Miller* for sex offenders) and the procedure dictated by the General Assembly (remand for resentencing) has remained exactly the same. It is difficult to discern how such a striking substantive change could be deemed to be strictly "procedural."

The *Miller* court, in fact, expressly rejected just such a sophistic analysis, ruling that:

> "[a]lthough the distinction between substance and procedure might sometimes prove elusive, here the change at issue appears to have little about it that could be deemed procedural. The 20 percent increase in points for sexual offenses in no wise alters the method to be followed in determining

until more than four months later, on December 21, 1988. To my mind, it is unjust, to put it mildly, to hold that appellant must receive the death penalty because this Court did not act more quickly in considering his appeal.

the appropriate sentence; it simply inserts a larger number into the equation."

482 U.S. at 433, 107 S.Ct. at 2453.

Similarly, in the instant case, the legislative change in maximum sentence available on remand (from life to death) in no way alters the method (remand to the sentencing court) to be followed in determining the appropriate sentence; it simply inserts a higher maximum sentence into the equation.

Therefore, I dissent and would vacate appellant's sentence of death and remand for resentencing to life imprisonment.