676 A.2d 1178

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1995.

Decided April 4, 1996.

410

412

Barnaby C. Wittels, Philadelphia, for Charles Brown.

Catherine Marshall, Philadelphia, Karen A. Brancheau, Robert A. Graci, Attorney General's Office, for the Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

This is an automatic direct appeal from the death sentence imposed upon Appellant, Charles Brown, following his conviction for first degree murder. The jury found as an aggravating circumstance that the Appellant had been convicted of another murder committed either before or at the time of the offense at issue, 42 Pa.C.S.A. § 9711(d)(11). No mitigating circumstances were found. Appellant was convicted also of possession of an instrument of crime.[1] He was sentenced to a consecutive 2½ to 5 year term of imprisonment on that charge. For the following reasons, we affirm the judgment of sentence.

On December 25, 1990, Richard Bethel celebrated the holiday with his common law wife, Gloria Morgan, and her family. Around 11:00 p.m., he decided to visit a neighborhood friend. He returned home an hour later. Bethel informed his wife that he was still on his way to the friend's house and took beverages from the refrigerator to take with him.

Bethel passed the corner of 22nd and Christian Street in Philadelphia on the way to his friend's house. Several men were standing on the corner, including Appellant who held the leash of his Rottweiler dog. As Bethel walked by, the dog snapped at him. Bethel did not stop, but angrily responded that he would have shot the owner and his dog if he had been bitten. Appellant handed the leash to another man and pursued Bethel. Appellant's friend, John Hawkins, followed them.

Appellant chased Bethel down Christian Street to 23rd Street and then to Pemberton Street where Bethel lived. Bethel stopped on Pemberton Street within a short distance of

1. He was acquitted on a charge of intimidation of witnesses.

his house. Appellant fired several shots at Bethel with his .45 caliber revolver. Bethel fell to the ground and started crawling to his house. Bethel reached the front of his house and called to his wife, but Appellant shot him again. Bethel's wife had heard shouting and recognized her husband's voice. She opened the door, but shut it when the shots were fired.

Appellant ran around the corner, followed by Hawkins. No shots were fired by Hawkins. Appellant asked him whether he had heard Bethel moan. Hawkins' response was negative, but Appellant stated that Bethel was not dead yet. Appellant went back and fired more shots at Bethel. The two men then fled the scene. Police officers responded to Gloria Morgan's emergency call and transported Bethel to a hospital. Bethel died of multiple gunshot wounds within five hours.

Appellant was identified at the trial as the man who shot Bethel by John Hawkins and Barry Cheeseboro. Hawkins described the entire sequence of events culminating with Bethel's death. Cheeseboro, the victim's neighbor, testified as to the observations he made from the window of his house. Cheeseboro had looked out of his window when he heard people running down his street. He saw the Appellant shoot Bethel, whom he recognized as a neighbor although not by name. He also observed another man at the scene whom he could not identify, but stated that shots were fired only by the Appellant. Cheeseboro testified that Bethel tried to get away and that the Appellant continued to shoot at him.

In all capital cases in which the death penalty is imposed, an independent review of the sufficiency of the evidence must be conducted, even where the appellant has not challenged the conviction on that ground. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, reh'g denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, we must determine whether the evidence and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements

of the offense beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985). Applying this standard, we find that the evidence was sufficient to support the verdict of the jury.

## I. *PRE-TRIAL ERRORS*

Appellant asserts that the trial court erred in denying his pre-trial motion to suppress the identification made by Gloria Morgan during a photographic array shown to her prior to his arrest. He claims that the photographic array was unduly suggestive and the identification should not have been allowed since there was no other evidence of reliability of the witness' identification.

At the hearing on the suppression motion, Detective Michael Cahill testified that he contacted Gloria Morgan approximately two to three weeks after the incident to show her a photographic array that included a photograph of the Appellant. The array consisted of black and white photographs depicting front and side views of eight men. He testified that Morgan was not told that the person suspected of committing the crime was included in the array; nor was it suggested that she select any particular photograph. Morgan selected the Appellant's photograph and told the detective that she was not one hundred percent sure but that the photograph looked like the man who killed her husband. Morgan had been shown a separate photographic array, which did not include the Appellant, within three days of the incident and had failed to make an identification.

Defense counsel argued that the photographs were not sufficiently similar and requested that the identification be suppressed. The trial judge examined the photographs and stated that six of the photographs depicted men with similar dark-skinned complexions. He indicated that only one photograph was of a male whose complexion was close to the Appellant's and that the remainder had darker complexions. One person was wearing eyeglasses, but Morgan's description of the perpetrator did not include that detail. The trial judge

denied the motion to suppress the identification based on his finding that the photographic array was not suggestive.

At trial, Morgan testified that she had chosen the photograph of the Appellant from the array because she had a feeling that he was the one. She was unable to identify the Appellant at trial, however. She explained that she could not make a positive identification because the perpetrator wore a cap on his head and she could not see his eye area. She testified that the perpetrator shared several physical characteristics of the Appellant, including age, height, weight, and color of complexion.

We find that the trial judge properly denied the suppression motion because the record supports his findings that the photographic array was not suggestive and consisted of photographs sufficiently similar so as not to draw her attention to any particular photograph. Defense counsel was able to vigorously cross-examine Morgan to Appellant's advantage about her inability to identify the Appellant at trial and her testimony that she was not free of any doubt when she selected his photograph from the array. Since the photographic array was not impermissibly suggestive, Morgan's testimony regarding her selection of Appellant's photograph was admissible into evidence.

Appellant next argues that the trial judge erred in ordering him to shave his beard before participating in a lineup. Appellant had requested the lineup, but withdrew his request when the trial judge imposed that condition at the request of the prosecutor. The prosecutor explained to the trial judge that the witnesses had described the perpetrator as clean shaven, that Appellant was clean shaven when arrested, and that he had begun to grow a beard before his preliminary hearing. Appellant's decision to forego the lineup was contrary to the advice of his attorney.

A defendant has no right to participate in a lineup. *Commonwealth v. Rush,* 522 Pa. 379, 562 A.2d 285 (1989). Thus, the grant or denial of a request for a lineup is within the trial court's discretion and the decision will not be disturbed

absent an abuse of discretion. *Id.,* 522 Pa. at 387, 562 A.2d at 289 (citation omitted). The trial judge's grant of Appellant's request conditioned upon shaving facial hair was not an abuse of discretion when the witnesses to the murder identified Appellant as the perpetrator and described him as clean shaven.

■■■■ Appellant's related claim that the trial court erred in permitting the Commonwealth to introduce evidence of the change in his appearance after the arrest must also be dismissed. Evidence of change in a defendant's appearance is admissible to show consciousness of guilt. *Commonwealth v. Holland,* 480 Pa. 202, 389 A.2d 1026 (1978). A jury may infer consciousness of guilt upon finding that a defendant intentionally altered his physical appearance for the purpose of avoiding identification. In this case, the trial court properly admitted evidence that Appellant did not have any facial hair prior to his arrest but began to grow a beard shortly thereafter.

## II. *TRIAL ERRORS*

■■■ Appellant asserts that the trial judge erred in refusing to grant a mistrial or, alternatively, to strike the testimony of Officer William Phillips. During his assignment with the South Division Task Force, Officer Phillips routinely patrolled the area where the homicide occurred. In the year before the incident, he often saw the Appellant walking in the neighborhood. He testified that the Appellant had a light mustache most of that time, but did not have a beard.

Officer Phillips also testified that he saw the Appellant in the company of Willie Dukes, the man whom the Appellant was supposed to have handed his gun to after shooting the victim. On direct examination, Officer Phillips testified as follows:

Q. From what you personally observed do you know whether Willie Dukes knew the defendant Charles Brown?

A. Yes, I believe he did know the defendant Charlie Brown.

Q. What do you base that on?

A. Willie Dukes at that time was selling drugs from that corner of 22nd and Christian. The thought was—

(N.T. September 3, 1992, p. 57). Defense counsel objected and moved for a mistrial. The motion was denied.

Appellant argues that the Commonwealth intentionally sought to implicate him in illegal drug activity and that the trial judge should have given a cautionary instruction to the jury. The record demonstrates that the remark was unsolicited. In fact, the prosecutor stated that he did not want to know what "the thought" was, but was asking the witness whether he ever saw Willie Dukes in the company of the Appellant. No cautionary instruction was given because none was requested.

 Appellant contends that the prosecutor's cross-examination of another police officer, Detective Michael Cahill, was improper. Detective Cahill was assigned to investigate the Bethel homicide. He was called as a defense witness to testify about investigatory efforts made by the police, including interviews of neighbors who may have witnessed the homicide.

On cross-examination, the prosecutor asked the witness if he knew how many homicides had occurred in the city in 1990. Defense counsel objected and the objection was sustained. The prosecutor continued with a similar line of questions:

Q. Would it be fair to say the line detectives, detectives like yourself, are very, very busy, especially in 1990 with the number of homicides that had occurred?

[DEFENSE COUNSEL]: Objection to the form of the question.

Q. Has there ever been a busier year in the history of Philadelphia—

[DEFENSE COUNSEL]: Objection and move for mistrial.

[THE COURT]: Sustained, and I'll deny your motion for mistrial.

Q. Is it unusual for other detectives in the Homicide Division to pick up a case and later go back to scenes or find witnesses that original detectives have not found?

A. No, sir.

Q. Can that be based upon the very, very large number of homicides that occur within Philadelphia?

A. Yes, sir.

Q. In fact, was 1990 a particularly—

[DEFENSE COUNSEL]: Objection again.

[THE COURT]: Sustained.

(N.T. September 4, 1992, pp. 27–28).

Appellant argues that the prosecutor intended to play on the emotions and outrage of the jurors relative to the large number of homicides in the city. He suggests that the trial judge's refusal to grant a mistrial and failure to give cautionary instructions, although the latter were not requested, burdened him with the implication that the homicide rate should be related to his guilt. This grossly overstates the effect of the prosecutor's inquiry. When viewed in context of the direct examination, it becomes evident that the questioning was designed to demonstrate that the thoroughness of the investigation reflected the time available to devote to any particular homicide. The prosecutor should have heeded the trial court's rulings and rephrased his questions to make this point. We find, however, that the prosecutor's unartful questioning did not warrant a mistrial.

During the cross-examination of Detective Cahill, the prosecutor questioned him regarding the statement taken from Gloria Morgan several hours after her husband's death. On direct examination, defense counsel attempted to show inconsistencies between the statement and Morgan's testimony at trial. The prosecutor established that Morgan was distraught at the time that the statement was given. The prosecutor asked, "Would it be fair to say this was the day after little more than 24 hours after she witnessed her husband get blown away in front of her house?" Defense counsel's motion for a mistrial was denied.

A mistrial should be granted "only when the incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial." *Commonwealth v. Lewis,* 523 Pa. 466, 479, 567 A.2d 1376, 1383 (1989) (citations omitted). Not every unwise or unwarranted remark made during the course of a trial warrants a new trial. *Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984). Comments by a prosecutor do not constitute reversible error unless "the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively, and render a true verdict." *Commonwealth v. Pursell,* 508 Pa. 212, 226, 495 A.2d 183, 190 (1985) (citations omitted). The prosecutor's question was overly dramatic, but did not constitute reversible error.

Appellant next argues that the trial judge erred in permitting Dr. Edward Lieberman to testify as an expert witness because he was not licensed to practice medicine in Pennsylvania. Dr. Lieberman, a forensic pathologist from the City of Philadelphia's Medical Examiner's office, was licensed in the state of Florida. He supervised the autopsy performed on the victim. Defense counsel did not dispute Dr. Lieberman's qualifications as a forensic pathologist, but objected to his appearance as an expert witness because he was not licensed to practice medicine in Pennsylvania.

"The purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury." *Commonwealth v. Zook,* 532 Pa. 79, 615 A.2d 1 (1992), cert. denied, 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993). The determination of whether a witness is qualified as an expert is within the discretion of the trial judge. *Commonwealth v. Young,* 524 Pa. 373, 389, 572 A.2d 1217, 1225 (1990). The decision is to be based solely on whether the expert's opinion will aid the jury in finding the truth of the issues involved. *Id.*

Dr. Lieberman served as the chief pathology resident for sixteen months of his four years of study at the Hahnemann

University Hospital in Philadelphia. He was employed as an assistant medical examiner by the City of Philadelphia for two years at the time of trial. Throughout his entire training, he had performed approximately 1500 autopsies. He was present during the autopsy of Bethel's body and had reviewed the slides and case report prepared by the Medical Examiner's office. The trial judge clearly did not abuse his discretion by allowing Dr. Lieberman to testify as an expert witness.

■■■ Appellant claims that the trial judge erred in refusing to grant a mistrial due to the Commonwealth's failure to identify Barry Cheeseboro as an eyewitness until the trial began. The Commonwealth did not disclose the identity of the witness prior to trial because a protective order had been entered pursuant to Pa.R.Crim.P. 305F upon its request. When the eyewitness' name was disclosed, defense counsel objected because the Commonwealth did not give notice of the filing of the protective order. A request for a mistrial was denied. The trial judge granted a twenty-four hour continuance to prepare for the testimony of the witness and stated that he would entertain a request for additional time if necessary. No additional time was requested.

In *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983), cert. denied, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983), the prosecutor had withheld the name and identity of a fourteen year old boy due to the youth's reluctance to testify and fear of repercussions. The prosecutor had failed to advise the trial court of its intention to withhold the identity of the witness as required. We noted that the prosecution is not permitted to make an ex parte determination of which witnesses it plans to disclose or not disclose, but determined that no prejudice resulted. We stated that "where the identity of a witness unfavorable to the accused is withheld from the defense until trial, no reversible error occurs if the defense is given ample opportunity by the trial court to ask for a continuance, cross-examine the witnesses, or take whatever remedial steps are necessary and reasonable under the circumstances." 500 Pa. at 252, 455 A.2d at 1178 (citations omitted).

Unlike *Bonacurso,* the prosecutor did not unilaterally withhold the identity of the eyewitness, but instead requested and obtained a protective order upon motion to the trial court. Appellant does not assert that the Commonwealth failed to make a sufficient showing of the need for a protective order in this case. Nor was the Appellant prejudiced by the disclosure of the identity of the eyewitness at the time of trial because defense counsel was given a continuance to prepare for his testimony. The trial judge did not abuse his discretion in denying the request for a mistrial.

■■■ Appellant contends that the trial judge acted improperly in limiting the closing argument of defense counsel. Defense counsel's closing argument was interrupted by the trial judge for a side bar conference. The trial judge announced that he was limiting closing arguments to forty-five minutes apiece and told defense counsel that she had fifteen minutes remaining. Defense counsel noted her objection on the record and indicated that the trial judge had not advised them of any time limitation before arguments began.

■■■■ A defendant has a right to summation. *Commonwealth v. Turner,* 469 Pa. 319, 365 A.2d 847 (1976). The length of closing arguments is left to the discretion of the trial court. "Unless there is such an unreasonable limitation of time that effectively denies a defendant the right to summation a criminal conviction should not be disturbed." *Commonwealth v. Mervin,* 230 Pa.Super. 552, 556–57, 326 A.2d 602, 605 (1974).

Appellant concedes that the issues in this case were not complex, but claims that the time limitation prevented defense counsel from presenting an argument that would enable the jury to concentrate on the issues. Appellant fails to state how he was prejudiced by the time limitation or what could have been done if more time had been allowed. See *Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38 (1994). While we do not approve of the trial judge's imposition of time limits after closing argument had begun, review of defense counsel's argu-

ment indicates that ample time was allowed to summarize the issues before the jury.[2]

## III. *PENALTY PHASE*

▮ At the penalty phase of the trial, the Commonwealth introduced evidence of one aggravating circumstance, i.e., the defendant has been convicted of another murder, committed either before or at the time of the offense at issue. 42 Pa.C.S.A. § 9711(d)(11). Appellant asserts that the Commonwealth did not establish his identity as the person convicted of the prior crime.

The Commonwealth presented the testimony of Detective Robert Snell who identified the Appellant as one of the men convicted of killing Earl Ford in 1973. The police department's record of the homicide, which was introduced into trial, established that the Appellant had been convicted of second degree murder. Stewart Greenberg, a supervisor for the Department of Probation and Parole, testified also that his unit supervised the Appellant's parole in connection with that homicide. He stated that Appellant was convicted of the offense on February 10, 1975, was nineteen years old when he was sentenced, and was on parole when Bethel was murdered. We find that this evidence was sufficient to sustain the Commonwealth's burden of proving the aggravating circumstance beyond a reasonable doubt.

▮ On direct examination, the prosecutor asked questions of both witnesses related to the events surrounding the prior homicide. Greenberg testified that the Appellant was sentenced to imprisonment for 5–20 years on the second degree murder charge and two sentences of 5–10 years for criminal conspiracy and aggravated assault to run concurrently. Detective Snell testified to the circumstances underlying the

2. Appellant also claims that the trial judge repeatedly admonished and castigated defense counsel in the jury's presence. No citation to the record is given in support of his claim. Review of the entire record discloses that defense counsel was held in contempt when she refused to accept rulings without comment. This did not occur in the jury's presence, however, and did not prejudice the Appellant.

convictions including reference to the fact that a second victim had been wounded by a bullet.

Appellant argues that only the facts surrounding the prior homicide were admissible and that the related charges of aggravated assault and criminal conspiracy should not have been admitted into evidence. This argument is meritless. We rejected a similar argument in *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313 (1993). In *Young,* the Commonwealth introduced evidence to establish that the defendant had a significant history of felony convictions involving the use or threat of violence to another person, 42 Pa.C.S.A. § 9711(d)(9). The appellant argued that the sentencing court should have limited the evidence to introduction of a certified record of conviction and a brief summary of the facts underlying the prior convictions. We held that it was not error to refuse to limit evidence of the aggravating circumstance because "the jury is entitled to know more than the mere fact of conviction." *Id.,* 536 Pa. at 72, 637 A.2d at 1320. See also, *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984).

## IV. *INEFFECTIVENESS CLAIMS*

 Appellate counsel raises several claims of ineffective assistance of trial counsel. "In order for [an appellant] to prevail on each claim of ineffective assistance of counsel, he must show (1) the underlying claim is of arguable merit; (2) the particular course of conduct did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him." *Commonwealth v. Howard,* 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994), citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

 Appellant asserts that trial counsel rendered ineffective assistance by repeatedly disregarding the trial judge's instructions and by refusing to argue her points for charge to the court. He argues that confrontations between defense counsel and the trial judge created a distraction for the jury, but fails to cite to the record to support his claim. The reason for this failure is obvious as the record indicates that defense

counsel vociferously expressed her frustration and disagreement with the trial judge outside of the presence of the jury. Her petulance in refusing to argue the points for charge after being held in contempt by the trial judge did not prejudice the Appellant. The trial judge reviewed the requested points for charge and accepted some of them. As Appellant does not complain that the trial judge's charge was inadequate, the claims have no merit.

 Appellant claims that defense counsel did not adequately prepare for the penalty phase of the trial. Defense counsel introduced the testimony of Appellant's wife and grandmother. The witnesses attested to difficulties that the Appellant faced due to the absence of parental support and described his loving relationship with his children. Appellant suggests, without more, that defense counsel should have produced school records, juvenile court records, and a psychologist as evidence of mitigating circumstances. This is insufficient.

> A finding of ineffectiveness can never be made unless it can be concluded that the alternative not chosen offered a potential for success substantially greater than the tactics actually utilized. As appellant has failed to state what alternative course of conduct counsel could have chosen which would have inured to appellant's benefit, appellant has failed to state a cognizable claim of ineffectiveness.

*Commonwealth v. Pirela*, 510 Pa. 43, 59, 507 A.2d 23, 31 (1986) (citations omitted).

Finally, Appellant raises additional claims of ineffectiveness for (1) failing to object to the aggravating circumstance based on insufficiency of evidence; and (2) failing to object to comments made by the prosecutor during closing argument at the penalty phase referring to other crimes related to the 1973 homicide conviction. We have determined that there was sufficient evidence to support the jury's finding of the aggravating circumstance and that the evidence of the convictions for criminal conspiracy and aggravated assault was admissible.

Therefore, defense counsel will not be deemed ineffective for failing to raise issues that have no arguable merit.

Based on our review of the statistical data provided by the Administrative Office of Pennsylvania Courts, we conclude that the sentence of death was not disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3)(iii). The judgment of sentence is affirmed.

The Prothonotary is directed to transmit to the Governor a full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.