J. S63040/17

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
JEFFREY R. RITENOUR, : No. 568 WDA 2017
:
Appellant :


Appeal from the PCRA Order, March 30, 2017,
in the Court of Common Pleas of Fayette County
Criminal Division at No. CP-26-CR-0000209-2013


BEFORE:  BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      FILED NOVEMBER 28, 2017

Appellant, Jeffrey R. Ritenour, appeals from the March 30, 2017 order of the Court of Common Pleas of Fayette County denying his first petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

On direct appeal, a previous panel of this court provided the following recitation of the facts:

> The minor victim and Appellant are distant cousins who have known each other for a long time.  The victim testified that on May 24, 2012, she and Appellant went on a walk together.  While they were walking, Appellant asked the victim to have sex with him; and the victim refused.  Appellant then pushed the victim to the ground, climbed on top of her, and removed her shorts.  Appellant touched the victim all over her body, including her breasts and vaginal area, and inserted his penis into the victim's vagina.  The victim testified that she and Appellant walked on

the same trail and engaged in nonconsensual sexual intercourse on two other occasions, in June and July of 2012. Appellant was fifty-one (51) years old at the time of the offenses. The victim was fourteen (14) years old at the time of the first assault, and fifteen (15) years old at the time of the second and third assaults.

The victim told her ex-boyfriend about the assaults. The victim's ex-boyfriend then told the victim's parents, and they contacted the police. At trial, a Pennsylvania State Trooper testified that he went to [appellant's] residence as part of the investigation. Appellant initially denied the assaults, but he eventually confessed to the first assault, which occurred on May 24, 2012. The trooper read [appellant] his Miranda[Footnote 2] warnings, and [appellant] repeated his verbal confession to the trooper. At [appellant's] request, the trooper wrote down [appellant's] statement, which [appellant] signed.

> [Footnote 2] Miranda v. Arizona, 384 U.S. 436 (1966).

A jury convicted [appellant] on January 9, 2014, of statutory sexual assault, aggravated indecent assault, corruption of minors, and simple assault. On April 1, 2014, the [trial] court sentenced [appellant] to three (3) to ten (10) years' imprisonment, and informed [appellant] of his lifetime registration requirement under the Sex Offender Registration and Notification Act ("SORNA")[Footnote 3]. Appellant did not file any post-sentence motions. Appellant timely filed a notice of appeal on April 11, 2014. That same day, the [trial] court ordered [appellant] to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and [appellant] timely complied.

> [Footnote 3] "[SORNA], commonly referred to as the Adam Walsh Act, became effective on December 20, 2012.

> By its terms, any individual who was then being supervised by the board of probation or parole was subject to its provisions." Commonwealth v. Partee, 86 A.3d 245, 246 (Pa.Super. 2014). SORNA replaced Megan's Law as the statute governing the registration and supervision of sex offenders. SORNA designates a conviction for statutory sexual assault, 18 Pa.C.S.A. § 3122.1(b), as a "Tier III" sexual offense, subjecting a defendant to a lifetime registration requirement. 42 Pa.C.S.A. § 9799.14(d)(3); 42 Pa.C.S.A. § 9799.15(a)(3).

Commonwealth v. Ritenour, No. 581 WDA 2014, unpublished memorandum at 1-3 (Pa.Super. filed October 6, 2014).

The PCRA court provided the following procedural history:

> A [PCRA] hearing was held in this matter on February 2, [2017], at which time testimony was presented relative to trial counsel's alleged ineffective assistance relative to the following issues: (1) Trial counsel's failure to present [appellant's] fuel records, (2) Trial counsel's failure to obtain [appellant's] employment records, (3) Trial counsel's failure to call a witness, (4) Trial counsel's failure to obtain a record of the victim's Facebook account, (5) Trial counsel's failure to obtain photographic evidence of [appellant's] identifying marks, and (6) Trial counsel's failure to provide evidence of a hernia scar.
>
> [Appellant] was found guilty by a jury of Statutory Sexual Assault, Aggravated Indecent Assault, Corruption of Minors, and Simple Assault, 18 Pa.C.S. §§ 3122.1, 3125, 6301, and 2701, respectively. He was sentenced to a term of imprisonment of three to ten years on April 1, 2014, and his sentence was affirmed by the Pennsylvania

> Superior Court on April 28, 2015.[1]   The trial evidence established that [appellant] was fifty-one years old at the time of the crimes, having been born on July 22, 1961, and the victim, whose date of birth is May [], 1997, was fourteen years of age at the time of the first occurrence, fifteen when the other incidents took place.

PCRA court opinion, 3/30/17 at 1-2.

Appellant raises the following issues for our review:

1. Whether the PCRA court erred in not finding defense counsel, Michael Garofalo, Esq., ineffective for failing to present [appellant's] fuel receipts at trial?

2. Whether the PCRA court erred in not finding defense counsel, Michael Garofalo, Esq., ineffective for failing to obtain [appellant's] employment records?

3. Whether the PCRA court erred in not finding defense counsel, Michael Garofalo, Esq., ineffective for failing to call Rusty Ritenour as a witness?

4. Whether the PCRA court erred in not finding defense counsel, Michael Garofalo, Esq.,

---

[1] This court affirmed appellant's judgment of sentence on October 6, 2014. Appellant filed a petition for appeal to the Supreme Court of Pennsylvania, which was denied on March 31, 2015.  Commonwealth v. Ritenour, 113 A.3d 279 (Pa. 2015).  A petition under the PCRA is timely if it is filed within one year of the date that the petitioner's judgment of sentence becomes final.   42 Pa.C.S.A. § 9545(b)(1).   The PCRA defines the date that a judgment becomes final as "the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.  Id. at § 9545(b)(3).  The Supreme Court of the United States requires that petitions for a writ of certiorari be filed within 90 days of the denial of discretionary review by a state court of last resort.  Sup.Ct.R. 13. Therefore, appellant's PCRA petition is timely filed.

ineffective for failing to obtain a record of [the victim's] Facebook account?

5. Whether the PCRA court erred in not finding defense counsel, Michael Garofalo, Esq., ineffective for failing to provide photographic evidence of [appellant's] identifying marks?

6. Whether the PCRA court erred in not finding defense counsel, Michael Garofalo, Esq., ineffective for failing to provide evidence of [appellant's] hernia scar?

Appellant's brief at 3 (capitalization omitted).

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." Commonwealth v. Dennis, 609 Pa. 442, 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. Id. at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, id. § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic, or tactical decision by counsel[.]" Id. § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" Id. § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." Id. § 9544(b).

To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. Commonwealth v. Chmiel, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from Commonwealth v. Pierce, 527 A.2d 973, 975-976 (Pa. 1987).[Footnote 5] Counsel is presumed to have rendered effective assistance. Commonwealth v. Ali, 10 A.3d 282, 291 (Pa. 2010). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Jones, 912 A.2d 268, 278 (Pa. 2006). Finally, because a PCRA petitioner must establish all the Pierce prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis. Ali, 10 A.3d at 291.

> [Footnote 5] Pierce reiterates the preexisting three-prong test for ineffective assistance of counsel in Pennsylvania and holds it to be consistent with the two-prong performance and prejudice test in Strickland v. Washington, 466 U.S. 668 (1984). Pierce, 527 A.2d at 976-977.

Commonwealth v. Treiber, 121 A.3d 435, 444-445 (Pa. 2015).

I.

Appellant avers that Attorney Garofalo rendered ineffective assistance of counsel during trial because he failed to introduce appellant's fuel receipts and employment records into evidence. Specifically, appellant avers that if

his "fuel receipts and employment records were presented at trial, they would have supported his defense that he was traveling so often during the time period of the alleged sexual assaults that there was no way that he had the time to commit the offenses." (Appellant's brief at 9.)

During trial, appellant testified that on May 24, 2012, he had returned home after working in Morgantown, Pennsylvania,[2] and that upon exiting the Pennsylvania Turnpike at Donegal between 5:00 and 5:30 p.m., he purchased fuel at the same time and that he had the receipts at home establishing this alibi. (Notes of testimony, 1/8/14 at 54-55.) At no point, however, did appellant furnish any sort of fuel receipt for May 24, 2012 to either Attorney Garofalo or during collateral review. During the PCRA hearing, appellant furnished several receipts documenting his purchases during the course of his employment from April through July of 2012; however, appellant failed to produce any receipts from May 24, 2012. (See notes of testimony, 2/2/17 at 21, 30.) Moreover, Attorney Garofalo testified that he never received the fuel receipts in question. (Id. at 42.) Specifically, Attorney Garofalo testified to receiving only timecards and food receipts from appellant. (Id.)

We agree with the PCRA court, which found that Attorney Garofalo was not ineffective, "for not presenting to the jury any receipts that were not given to him, nor can [he] be ineffective for failing to present a receipt from

---

[2] Morgantown is approximately 240 miles away from Fayette County.

May 24, 2012, that may not even exist." (PCRA court opinion, 3/30/17 at 3.) Accordingly, we find that appellant's first issue lacks arguable merit.

Likewise, appellant claims that Attorney Garofalo was ineffective for failing to present appellant's employment records to the jury. Specifically, appellant states that "Attorney Garofalo's ineffectiveness prejudiced [appellant] in that the evidence of [appellant's] fuel receipts and employment records could have convinced the jury that [appellant] had no time to commit the alleged sexual assaults." (Appellant's brief at 9.) The record, however, demonstrates that Attorney Garofalo examined appellant extensively during trial regarding his employment-related travel to Morgantown. During the PCRA hearing, Attorney Garofalo testified that appellant's timesheet from May 24, 2012, documented that appellant worked for five and one-half hours in Morgantown. (Notes of testimony, 2/2/17 at 43.) According to Attorney Garofalo's testimony, however, the timesheet did not provide any indication as to when the work was specifically performed. (Id.) Specifically, we note that the timesheet in question did not establish when appellant was still in Morgantown, and we agree with the PCRA court's determination that Attorney Garofalo "had the timesheets and used them in such a way as to be reasonably calculated to effectuate his client's best interests." (See PCRA court opinion, 3/30/17 at 3.) Therefore, we find that appellant's claim that Attorney Garofalo was ineffective for failing to obtain appellant's employment records is without arguable merit.

II.

Appellant next raises the issue of whether Attorney Garofalo was ineffective for failing to call Rusty Ritenour as a witness. When evaluating whether counsel was ineffective for failing to call a potential witness, we are bound by the following standard:

> When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the Strickland test by establishing that:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; and (4) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.
>
> Commonwealth v. Washington, 592 Pa. 698, 927 A.2d 586, 599 (2007). To demonstrate Strickland prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Commonwealth v. Gibson, 597 Pa. 402, 951 A.2d 1110, 1134 (2008); see also Commonwealth v. Chmiel, 585 Pa. 547, 889 A.2d 501, 546 (2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense.").

Commonwealth v. Johnson, 966 A.2d 523, 536 (Pa. 2009).

Specifically, appellant contends that Ritenour's testimony as to conversations that he had with the victim on Facebook Messenger in which she allegedly admitted to Ritenour "that her claim that she was sexually

- 9 -

assaulted by [appellant] was false." (Appellant's brief at 11; notes of testimony, 2/2/17 at 7.) Appellant satisfies the first three prongs of the Washington test. There is undisputed evidence in the record that Ritenour existed, was available and willing to testify on appellant's behalf, and that Attorney Garofalo knew of Ritenour's existence.

Appellant, however, fails to demonstrate the fourth Washington prong--that the absence of Ritenour's testimony deprived appellant of a fair trial. To the contrary, Ritenour's testimony, if found to have been credible by the jury, could have been fatal to appellant's defense at trial. During the PCRA hearing, Ritenour read the following transcript of a conversation he had with the victim on Facebook Messenger:

> A. . . . I said at 4:38 P.M., did Jeff really do what the paper said he did because I honestly do not see him ever doing that. [The victim] at 4:39 P.M., the cop changed everything around. Everything I told him he made it sound worser. [sic] Then I said at 4:40 P.M., but I asked did he really do it. I mean he is my uncle, I've known him all my life and I don't see him raping someone. [The victim], 4:41 P.M., not really. I tried to tell the cops that but it's still rape if you have sex with a minor.
>
> Q. Next message?
>
> A. [The victim], 4:42 P.M., but did you willingly do it or if so it's not rape. [The victim], 4:43 P.M., kind of.

Notes of testimony, 2/2/17 at 15.

Attorney Garofalo explicitly testified that his decision to not call Ritenour as a witness was based on the contents of the Facebook Messenger conversations.

> A. . . . not to mention the fact that the latter portion of the conversation discusses a consensual encounter, without a specific date, between my client, [appellant] and [the victim]. It was a statutory sexual assault. It's still illegal. I didn't want the jury to have something concrete to say yes, there was a sexual encounter. So I didn't even try to introduce that in the record as an Exhibit.
>
> Q. So that was a decision of strategy.
>
> A. Totally. Totally a strategic decision to avoid having the jury have that where it admitted to a consensual encounter.
>
> Q. To go a step further, you were aware that half of this conversation was Rusty Ritenour.
>
> A. Yes, I was.
>
> Q. And can you tell us why you did not call him as a witness?
>
> A. Again, the main reason was because the conversation would confirm that there was at least one sexual encounter between [the victim] . . . , and I didn't want anybody to put a concrete definition to there being any sexual encounter because [appellant] had told me the entire time that there was never any contact.

Notes of testimony, 2/2/17 at 44-45.

As noted above, trial counsel cannot be determined to have provided ineffective assistance under the PCRA for failing to call a witness unless the

petitioner demonstrates the failure to call the witness resulted in the petitioner being deprived of his right to a fair trial. See Washington, 927 A.2d at 599. Attorney Garofalo's testimony establishes that calling Ritenour as a witness would have the opposite effect--that it would instead introduce evidence of a consensual sexual encounter between appellant and the victim--which would not have been beneficial to appellant's defense given the nature of the charges against him.

We, therefore, find that appellant has not met his burden under Washington in establishing that Attorney Garofalo's failure to call Ritenour to testify deprived appellant of a fair trial. Accordingly, appellant's third claim is without arguable merit.

With respect to appellant's fourth claim, we likewise agree with the PCRA court's finding that Attorney Garofalo's decision to not introduce a transcription of the victim's conversations with Ritenour on Facebook Messenger into evidence was a sound strategic decision. (PCRA court opinion, 3/30/17 at 5.) As noted above, Attorney Garofalo decided against introducing evidence that would confirm at least one sexual encounter between appellant and the victim because Attorney Garofalo has a reasonable basis for this strategic decision. Accordingly, appellant's fourth claim must fail.

III.

Finally, appellant avers that Attorney Garofalo was ineffective during trial because of his failure to produce photographic evidence of a mole in appellant's groin area and for his failure to provide any evidence of appellant's hernia scar. We agree with the PCRA court's finding that both of these claims are without merit.

We shall first address Attorney Garofalo's failure to present photographic evidence at trial of appellant's mole. During trial, appellant's wife, Tekla Ritenour, testified for the purposes of attempting to impeach the victim's testimony. Specifically, Mrs. Ritenour testified that appellant had a "hanging mole on the left inner groin that is impossible to have sex in any position without feeling it any which way, shape or form. . . . Not only that, you could feel it during intercourse no matter what position she used." (Notes of testimony, 1/9/14 at 76.)

During the PCRA hearing, Attorney Garofalo testified that he was of the opinion that Mrs. Ritenour's trial testimony alone was sufficient and that photographic evidence of appellant's mole was not required. Specifically, Attorney Garofalo testified as follows:

> Q.   So even if you had a photograph of it would you have presented it at trial?
>
> A.   No, I would have thought that the firsthand testimony of his wife of, and I can't remember

> how long she said they had been married,[3] but the firsthand testimony of his wife experiencing being able to see or feel the mole, as it's been called, would have been sufficient without presenting photographic evidence that the Court may never have introduced anyway to the jurors.

Notes of testimony, 2/2/17 at 47.

In order for a PCRA petitioner to establish that a trial counsel's chosen strategy lacked a reasonable basis, it must be concluded that the "alternative not chosen offered a potential for success substantially greater than the course actually pursued." Commonwealth v. Williams, 732 A.2d 1167, 1189 (Pa. 1999), citing Commonwealth v. Brown, 676 A.2d 1178, 1186 (Pa. 1996) (citation omitted). Here, appellant fails to demonstrate that introducing a photograph of his mole to the jury offered any potential for substantially greater success as required by Williams. We agree with the PCRA court's finding that Attorney Garofalo "articulated a rational strategic reason" for not offering a photograph of appellant's mole into evidence, and instead choosing to rely on Mrs. Ritenour's testimony to discredit the victim's testimony. The PCRA court's finding is soundly based in the record. Indeed, as noted above, Mrs. Ritenour testified that she always felt appellant's mole during sexual intercourse. Accordingly, we find

---

[3] Mrs. Ritenour testified that at the time of the trial, she and appellant had been married for 27 years. (Notes of testimony, 1/9/14 at 76.)

J. S63040/17

Attorney Garofalo's reliance on Mrs. Ritenour's testimony to be based in rational strategic reason, and therefore, appellant's claim is without merit.

Finally, we address appellant's claim that Attorney Garofalo was ineffective due to his failure to provide any evidence of appellant's hernia scar as a means of impeaching the victim's testimony. This claim is without merit, as there is no evidence in the record that Attorney Garofalo knew, or should have known, of the existence of appellant's hernia scar. Moreover, appellant testified that he forgot about his hernia scar when he was being questioned by Attorney Garofalo. (See notes of testimony, 2/2/17 at 33-34.) Attorney Garofalo testified that appellant never told him about a hernia scar, and that Mrs. Ritenour never testified about the existence of a hernia scar during trial. (See id. at 45-46.) Based on the evidence of record, appellant has failed to establish that Attorney Garofalo knew or should have known of appellant's hernia scar. Accordingly, this claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017

- 15 -