J-S73044-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TOMAS JAVIER QUINTANILLA-PINEDA, | : | |
| | : | |
| Appellant | : | No. 736 MDA 2017 |

Appeal from the Judgment of Sentence February 27, 2017
in the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004448-2016

BEFORE:    OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 23, 2018**

Tomas Javier Quintanilla-Pineda (Appellant) appeals from his February 27, 2017 judgment of sentence of 13 to 26 years' incarceration following his *nolo contendere* plea to rape, involuntary deviate sexual intercourse (IDSI), and theft by unlawful taking.    After review, we vacate the portion of Appellant's sentence requiring him to comply with SORNA, affirm in all other respects, and remand for the sole purpose of having the trial court issue the appropriate notice under 42 Pa.C.S. § 9795.3 as to Appellant's registration requirements.

The Commonwealth offered the following recitation of facts during Appellant's plea hearing.

> [O]n December 17th of 2011, the victim… entered her friend's apartment located in West York across from the Reliance Cafe. Her friend left to go meet her husband at a bar across the street. At that point the victim observed [Appellant] at the top of the

*Retired Senior Judge assigned to the Superior Court.

stairs on the second floor. She went up into the bathroom on the third floor. While she [was] in the bathroom on the third floor, [Appellant] came up behind her, grabbed her by the throat, threw her to the ground, [and] slammed her forehead on the floor. As she tried to get away, he pulled her back down, [and] pulled her pants down. … [Appellant] then anally penetrated her with his penis and then penetrated her vagina and then back to her anus.

During the assault, the victim called 911 on her cell phone. There [was] a recording of the assault occurring that was recorded by 911. While the 911 [dispatcher asked] for [the victim's] address, [Appellant] had his hand covering [the victim's] mouth so that she [was] unable to speak.

… [Bill Imler] would testify that he returned home to this apartment. When he return[ed] home, he [came] up the stairs to this assault occurring. He confronted [Appellant], who [*sic*] he recognized. At that point [Appellant] took off with the victim's cell phone. You are able to hear in the 911 call someone running, and then that call is disconnected.

Also, witness Lorraine Miller… would testify that [Appellant] was in her apartment that night, that [Appellant] worked at Reliance Cafe, and she would be able to identify him.

After this report came in, law enforcement … went to Reliance Cafe, searched for [Appellant and were] able to obtain [Appellant's] information from Reliance Cafe. They [did] an exhaustive search of York in order to find [Appellant]. They [were] unable to do that. However, charges [were] filed … .

Also, [the Commonwealth] would [have presented] at trial a SAFE [Sexual Assault Forensic Examiner] exam [where] evidence was collected, sent up to PSP [Pennsylvania State Police]. DNA evidence was sent up to them.

On January 22nd of 2013, there was a CODIS [Combined DNA Index System] hit on the DNA that was collected from the victim. It came back to [Appellant], who was located in California at that time. …

[Appellant was] eventually extradited back to Pennsylvania. Another sample [was] obtained from [Appellant]. That [was] sent

up to PSP, and on July 6th of this year, [the Commonwealth] did receive the DNA analysis from PSP that did confirm that … the semen sample that was collected from our victim was a combination of her DNA as well as [Appellant's].

N.T., 11/23/2016, at 3-5.

On November 23, 2016, Appellant pled *nolo contendere* as indicated above. Appellant's plea was accepted by the trial court, and on February 27, 2017, Appellant was sentenced to 6½ to 13 years of incarceration for rape; 6½ to 13 years of incarceration for IDSI, consecutive to the sentence of incarceration for rape; and 12 months of probation for theft, concurrent to the sentences of incarceration. At the time Appellant pled *nolo contendere*, rape and IDSI were enumerated Tier III offenses under SORNA, and required lifetime registration as a sexual offender. 42 Pa.C.S. § 9799.14(d); 42 Pa.C.S. § 9799.15(a)(3). At sentencing, Appellant signed a Megan's Law Registration Form, stating that he understood his registration requirements.

Appellant filed a post-sentence motion on March 2, 2017. The trial court held a hearing on April 3, 2017, and denied Appellant's post-sentence motion that same day. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration.

[1] Whether the [trial] court improperly gave [Appellant] two aggravated-range sentences, to be served consecutively, based on conduct inherent in the offenses: the violence inflicted in the course of rape by forcible compulsion and IDSI by forcible compulsion.

[2] Whether SORNA, or any other sex offender registration scheme, can legally apply to [Appellant] in light of the Pennsylvania Supreme Court's holding in **Commonwealth v. Muniz** that retroactive application of SORNA's registration provisions violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions.

Appellant's Brief at 4 (suggested answers omitted).

Appellant's first claim implicates the discretionary aspects of his sentence. We consider this claim mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> * * *

> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

**Commonwealth v. Antidormi**, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's

jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Here, Appellant filed a notice of appeal after preserving the issue by filing a motion to modify sentence, and his brief contains a statement pursuant to Pa.R.A.P. 2119(f). We thus consider whether Appellant raised a substantial question that his sentence is inappropriate.

In his Pa.R.A.P. 2119(f) statement, Appellant claims that his sentence raises a substantial question because the trial court "considered factors already included in the guidelines." Appellant's Brief at 13 (quoting *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005)). Specifically, Appellant alleges that the trial court imposed "two aggravated-range terms of incarceration due to the violence he inflicted—a factor inherent in both offenses." *Id*. A claim that a trial court relied on impermissible factors in fashioning a sentence raises a substantial question. *Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006). Thus, we conclude that

Appellant has presented a substantial question for our review, and proceed to evaluate Appellant's sentencing argument on its merits.

Here, Appellant was sentenced to two consecutive sentences in the aggravated range of the sentencing guidelines for rape and IDSI. A sentencing court "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Id*. at 1275.

> Since Appellant was sentenced within the guidelines, we may reverse only if application of the guidelines is clearly unreasonable. The [***Commonwealth v.***] ***Walls***[, 926 A.2d 957 (Pa. 2007)] Court noted that the term "unreasonable," while not defined in the Sentencing Code, generally means a decision that is either irrational or not guided by sound judgment. The Court continued that the context of the term's use in section 9781 indicates that the legislature intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition.
>
> The Supreme Court held that a sentence can be deemed unreasonable after review of the four elements contained in section 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b). [Subs]ection 9721(b) states in pertinent part:
>
> > [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing[.]
>
> In conclusion, our Supreme Court in ***Walls*** stated that when the proper standard of review is utilized, rejection of

a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guidelines ranges.

*Commonwealth v. Macias*, 968 A.2d 773, 777 (Pa. Super. 2009) (some citations and quotation marks omitted). In reviewing the record on appeal, this Court considers:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Here, the standard range of the guidelines for both rape and IDSI was 4 to 5½ years of incarceration. N.T., 2/27/2017, at 8. Appellant was sentenced in the aggravated range at both counts to 6½ to 13 years of incarceration. The trial court reviewed the presentence investigation report, and, thus, "we presume that the court properly considered and weighed all relevant factors in fashioning [Appellant's] sentence." *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013). Further, the record reveals that the trial court was cognizant of the sentence it was imposing. At sentencing, the trial court set forth its reasoning for imposing a sentence within the aggravated guideline range.

The nature of the offense, you know, followed somebody home and went into the house where [she was], attending to their nightly duties, and you violently raped [her]. I'm not so sure there is such a thing as a friendly rape. Quite frankly, in my mind all rapes are violent. But this went beyond your means to achieve your goal.

I agree, but for the introduction of the third person in the household, the rape would have continued. I can't speculate on what you did, but I cannot take any exception to the victim saying that her fear was that she was going to be killed. …

So I do believe that a sentence in the aggravated range is appropriate because of the violence of the offense.

N.T., 2/27/2017, at 12.

Appellant argues that the violence was already factored into the sentencing guidelines because he was convicted of rape and IDSI by forcible compulsion, and thus the trial court erred in basing his aggravated range sentence on the violence inflicted. However, violence is not necessary for forcible compulsion.

It is well-established that in order to prove the forcible compulsion component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape ... by forcible compulsion. [O]ur Supreme Court stated that forcible compulsion includes not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will. Further, the degree of force required to constitute rape is relative and depends on the facts and particular circumstances of a given case.

**Commonwealth v. Eckrote**, 12 A.3d 383, 387 (Pa. Super. 2010) (citations and quotation marks omitted).

- 8 -

In its 1925(a) opinion, the trial court found that Appellant "used an atypical amount of force that was larger than necessary to fulfill the forcible compulsion elements of [r]ape and IDSI." Trial Court Opinion, 6/23/2017, at 9. Specifically,

> Appellant here grabbed the [victim's] throat, threw the victim to the ground, and [] slammed her forehead on the floor. []Appellant came into the home while no one else was there beside the victim and fled the state shortly thereafter. The victim reported that she thought she was going to die during the attack. The reason that the assault stopped is because of a third party returning to the home. This amount of force here is significantly more than just climbing over the victim, which was the physical force used in *Eckrote*.

*Id.* at 9-10. After the initial assault wherein Appellant grabbed the victim's throat, threw her to the ground, and slammed her head on the floor, Appellant used forcible compulsion by pulling her back to the floor as she tried to get away, and forcibly removing her pants. Moreover, Appellant covered the victim's face with his hand, silencing her as she tried to ask the 911 dispatcher for help.

We agree that the violence cited by the trial court was not included in the sentencing guidelines' consideration of normal forcible compulsion, and thus the trial court's reliance on that violence in fashioning Appellant's aggravated-range guidelines sentences was not clearly unreasonable. *Walls*, 926 A.2d at 967 (holding that factors of victim's precise age and victim being entrusted to defendant's care were not subsumed within sentencing guidelines and thus could justify an above-guideline sentence).

Appellant alleges in his second claim that he should not be subjected to any sexual offender registration scheme in light of ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) (Opinion Announcing the Judgment of the Court) and ***Commonwealth v. Butler***, __ A.3d __, 2017 WL 4914155 (Pa. Super. Oct. 31, 2017).[1]   Appellant's Brief at 24; Appellant's Rule 2501(b) Post-Submission Communication, 11/1/2017.   Appellant argues that because he committed the instant rape and IDSI before the effective date of SORNA, the registration requirements of SORNA were applied *ex post facto*.

We consider Appellant's *ex post facto* claim mindful of the following.

> Critical to relief under the *ex post facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Based on these concerns, [in ***Calder v. Bull***, 3 U.S. 386 (1798),] Chief Justice Chase set out four categories of laws that violate such prohibitions:
>
>> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. **3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.** 4th. Every law that alters the legal

---

[1] Appellant acknowledged that he did not raise his ***Muniz*** claim within his Rule 1925(b) statement of errors complained of on appeal, which was filed on May 23, 2017, because ***Muniz*** was not decided until July 17, 2017.   Appellant's Brief at 4.   While Appellant raises this claim for the first time on appeal, we may review it.   ***See e.g. Butler***, 2017 WL 4914155 at *2 (holding that while issues not raised before the trial court are generally waived for appellate purposes, a challenge to the legality of a sentence based on ***Muniz*** need not be preserved in the trial court in order to be reviewable).

> rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.
>
> Furthermore, two critical elements must be met for a criminal or penal law to be deemed *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. As such, [o]nly those laws which disadvantage a defendant *and* fall within a **Calder** category are *ex post facto* laws and constitutionally infirm. **Commonwealth v. Young**, [] 637 A.2d 1313, 1318 ([Pa. ]1993) (emphasis in original). The *ex post facto* clauses of the United States and Pennsylvania Constitutions are implicated here because a holding rendering the effects of SORNA's registration requirements punitive would place the statute into the third **Calder** category: application of the statute would inflict greater punishment on appellant than the law in effect at the time he committed his crimes.

**Muniz**, 164 A.3d at 1195–96 (quotation marks, unnecessary capitalization, and some citations omitted) (emphasis added). "The **Muniz** Court held that Pennsylvania's SORNA is an unconstitutional *ex post facto* law when applied retroactively to those sexual offenders convicted of applicable crimes before the act's effective[] date and subjected to increased registration requirements under SORNA after its passage." **Commonwealth v. McCullough**, ___ A.3d ___, 2017 WL 5184490 at *1 (Pa. Super. Nov. 9, 2017); **Commonwealth v. Hart**, ___ A.3d ___, 2017 WL 5246752 at *6 n.9 (Pa. Super. Nov. 13, 2017) (holding that "the binding precedent emerging from **Muniz** is confined to the determination that SORNA's registration requirement is punishment that runs afoul of the *ex post facto* clause of the Pennsylvania Constitution when applied retroactively").

Appellant committed the instant rape and IDSI on December 17, 2011. At that time Megan's Law III applied, which would require Appellant to register with the state police for the remainder of his life as to both rape and IDSI. On December 20, 2011, the legislature enacted SORNA. *See* 42 Pa.C.S. §§ 9799.10 and 9799.41. SORNA became effective on December 20, 2012, prior to Appellant's plea and sentencing but after he committed the instant offenses. SORNA increased the registration period for certain crimes, but the registration requirement for those convicted of rape and IDSI remained a lifetime registration. *Compare* 42 Pa.C.S. § 9795.1(b)(2) (expired) *with* 42 Pa.C.S. § 9799.14(d) and § 9799.15(a)(3). Although it did not increase the period of registration for rape and IDSI, SORNA did enhance registration requirements for Tier III offenses, including quarterly in-person reporting and dissemination of personal information *via* an Internet website. *Muniz*, 164 A.3d at 1210-11, (citing *Commonwealth v. Perez*, 97 A.3d 747, 765 (Pa. Super. 2014) (Donohue, J. concurring)). These additional, more stringent registration requirements constitute a greater punishment than what would have been imposed under Megan's Law III. As such, retroactive application of these enhanced registration requirements runs afoul of constitutional *ex post facto* prohibitions. *See Muniz*, 164 A.3d at 1193, 1216.

Appellant pled guilty after SORNA went into effect, and thus the trial court purported to impose the new registration requirements and other provisions of SORNA on him retroactively for crimes he committed when

Megan's Law III was applicable. Because Appellant committed his crimes at a time when registration requirements for rape and IDSI were less onerous, and thus the punishment was lesser, SORNA cannot be applied retroactively to Appellant without violating the *ex post facto* clause of the Pennsylvania constitution. **See Muniz**, 164 A.3d at 1192-93. Thus, we are constrained to agree with Appellant that he is not required to register under SORNA.

As to the second part of Appellant's claim, this Court held in **Butler** that subsection 9799.24(e)(3) of SORNA, regarding the procedure for determining whether a defendant is a sexually violent predator, violates the federal and state constitutions "because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." 2017 WL 4914155 at *6. Appellant was specifically *not* designated as a sexually violent predator under 42 Pa.C.S. § 97993.24. Thus, the holding in **Butler** does not apply to Appellant, and it affords Appellant no relief. N.T., 2/27/2017, at 15.

We vacate that portion of Appellant's sentence requiring him to comply with SORNA. The remainder of his judgment of sentence is affirmed.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/23/2018</u>