J-E02005-19

2020 PA Super 252

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DAVID SANTANA, | : | |
| Appellant | : | No. 3488 EDA 2017 |

Appeal from the Judgment of Sentence Entered July 18, 2017
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000031-2017

BEFORE: BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J.,
DUBOW, J., KUNSELMAN, J., NICHOLS, J., and MURRAY, J.

OPINION BY KUNSELMAN, J.: **FILED OCTOBER 20, 2020**

## I. Introduction

In 2011, the General Assembly of Pennsylvania enacted the Sexual Offender Registration and Notification Act ("SORNA"), which adopted Title I of the federal Adam Walsh Act.[1]  A primary goal of the Adam Walsh Act (and, therefore, of SORNA) is addressing the inconsistencies that arose when 50 states had 50 unique, registration procedures for sex offenders.  Congress therefore incentivized states to establish a national, coordinated registry.  The federal government thereby hoped to track and to publicize sex offenders' residences, employment locations, and online identities with improved accuracy and predictability.

_____

[1] 42 Pa.C.S.A. §§ 9799.10-9799.41; 34 U.S.C. §§ 20911-20932.

However, in 2017, the Supreme Court of Pennsylvania found SORNA's registration requirements so injurious to reputation and individual liberty that they constitute a criminal punishment unto themselves. *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied* sub nom. *Pennsylvania v. Muniz*, ___ U.S. ___, 138 S.Ct. 925 (2018). Furthermore, *Muniz* barred retroactive application of SORNA's registration, because the General Assembly violates the federal and Pennsylvania constitutions whenever it increases the punishment for a crime after that crime has occurred. Hence, the registration requirements of SORNA are unconstitutional if the Commonwealth applies them to someone whose underlying sexual offense occurred prior to SORNA's effective date.

In this appeal, we granted *en banc* review to determine whether, in light of the foregoing, the Commonwealth could constitutionally charge and convict Appellant David Santana with failing to register in Pennsylvania, under SORNA, for a pre-SORNA crime that occurred in New York. The trial court held SORNA's registration requirements were not *ex post facto* punishments for Mr. Santana, because he moved to Pennsylvania after SORNA had taken effect.[2] By basing its decision on locality and not chronology, the trial court

---

[2] Specifically, Mr. Santana enter a negotiated guilty plea to the charge of failing to comply with the registration requirements of SORNA, 18 Pa.C.S.A. § 4915.1(a)(1), and the trial court sentenced him according to the terms of that plea bargain.

violated the precedents of the Supreme Court of the United States, the Supreme Court of Pennsylvania, and the federal and state constitutions. We therefore reverse its order denying Mr. Santana's post-sentence motions.

## II.    Factual and Procedural Background

The timeline of events in this case is critical.

In 1983, Mr. Santana committed a rape in New York,[3] and a court of that state convicted and sentenced him for it. When Mr. Santana committed his crime, Pennsylvania had no law requiring sex offenders to register in this Commonwealth. Neither did New York.

In January of 1996, New York's sex-offender registration law took effect. Around the same time (on October 24, 1995), Pennsylvania's legislature expanded our Sentencing Code to include a new Subchapter H, "Registration of Sexual Offenders." *See* Act 24 of 1995; P.L. 24, effective April 22, 1996 (a.k.a., "Megan's Law I"). Among other things, Megan's Law I established a database for compiling data on sex offenders upon their return to society. Only a few offenses triggered registration, and all registrations were ten years in duration. *See* 42 Pa.C.S.A. §§ 9791-9799 (repealed).

In 2000, New York paroled Mr. Santana, and, upon his release from prison, a New York criminal court ordered him to register as a sex offender for

---

[3] N.Y. Penal Law § 130.35.

life under that state's 1996 law.[4]  Over the next few years, the General Assembly of Pennsylvania amended our Subchapter H several times.  This included its 2011 adoption of SORNA to implement the Adam Walsh Act. SORNA took effect in Pennsylvania on December 20, 2012.

Three years later, Mr. Santana moved from New York to Pennsylvania. Believing he had to register here, Mr. Santana initially did so.  Police eventually discovered that he failed to update some of his registration data in a timely manner, and they arrested him.  He pleaded guilty.

On July 18, 2017, the trial court sentenced Mr. Santana to two years and nine months to five-and-a-half years' incarceration for failing to register under SORNA.  The next day, the Supreme Court of Pennsylvania decided *Muniz*, *supra*.

Mr. Santana immediately filed a post-sentence motion to withdraw his guilty plea and have all charges against him dismissed.  He claimed his SORNA registration requirement was an unconstitutional, *ex post facto* punishment for his 1983 crime.  Mr. Santana argued that, if SORNA's registration requirement was unconstitutional as to him, then the Commonwealth could

_____

[4] We note that New York's registration law differs from Pennsylvania's SORNA, because, unlike SORNA, New York's registration requirements do not rise to the level of criminal punishments, in and of themselves.  Instead, they are civil, regulatory consequences of the underlying sex offense, and the *Ex Post Facto* Clause (U.S. Const. art. I, § 10) therefore does not prohibit New York from applying them retroactively.  **See Devine v. Annuci**, 56 N.Y.S.3d 149 (N.Y. App. Div. 2017).

not convict him for failing to obey that unconstitutional requirement. In other words, he claimed that, because **Muniz** exempted him from SORNA, he unknowingly and erroneously pleaded guilty to the crime of failing to register – a crime he could not have committed, as a matter of law.

He asked the trial court to vacate his illegal sentence, allow him to withdraw his plea, and dismiss the case against him. The trial court denied relief, and Mr. Santana timely appealed.

### III. Analysis

Mr. Santana raises one issue in this appeal: "whether the trial court abused its discretion and erred as a matter of law when it determined [Mr. Santana's] registration and conviction under SORNA did not violate the state and federal *Ex Post Facto* Clauses." Santana's Original Brief at 4. Relying upon **Muniz**, he reiterates the arguments from his post-sentence motion. **See id.** at 9-13, 18-20.

The Commonwealth generally accepts Mr. Santana's reading of **Muniz**, but it claims SORNA's registration requirements do not retroactively increase Mr. Santana's punishment. It therefore asserts his conviction and sentence should stand. **See** Commonwealth's Original Brief at 7-9. The Commonwealth says that, because Mr. Santana faced lifetime registration requirements in New York in 2012 and he knew of SORNA when he moved to Pennsylvania,

SORNA is not *ex post facto* as to him.[5] ***See id.*** at 12. The trial court agreed with the Commonwealth and denied Mr. Santana's post-sentence motions to withdraw his guilty plea.

The law regarding withdraw of a guilty plea following sentence dictates that a "defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea." ***Commonwealth v. Broaden***, 980 A.3d 124, 129 (Pa. Super. 2009) (citations omitted). Such an injustice arises "if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea." ***Id.*** Because post-sentence motions to withdraw a plea are disfavored in the law,

---

[5] Also, the Commonwealth tangentially proposes a constitutional argument of its own. It believes the Full Faith and Credit Clause (U.S. Const. art. IV, § 1) of the federal constitution requires this Court to apply New York court's order that Mr. Santana register with local police. ***See*** Commonwealth's Brief at 11-12. The Commonwealth sites only a civil case to support its theory: ***Baker by Thomas v. General Motors Corp.***, 522 U.S. 222 (1998) (holding that the Full Faith and Credit Clause does not require Missouri to apply a Michigan court's equitable decree against the plaintiffs in a Missouri-based, federal-diversity lawsuit, who were not parties to the Michigan matter).

The Commonwealth's reliance upon ***Baker*** and the Full Faith and Credit Clause to enforce the criminal judgment from New York against Mr. Santana in Pennsylvania is misplaced. "[T]he Full Faith and Credit Clause does not require that Sister States enforce a foreign, penal judgment." ***Nelson v. George***, 399 U.S. 224, 229, (1970). ***See also Commonwealth v. Iverson***, 516 A.2d 738, 739 n.2 (Pa. Super. 1986) (recognizing that, in a multistate investigation, the Commonwealth may not rely upon the Full Faith and Credit Clause to import a final judgment from Delaware to conclusively establish, as *res judicata*, that police constitutionally seized the evidence).

"the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." ***Commonwealth v. Hart***, 174 A.3d 660, 664 (Pa. Super. 2017).

"Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action." ***Commonwealth v. Shaffer***, 712 A.2d 749, 751 (Pa. 1998). A court abuses its discretion if, among other things, "the law is not applied" correctly. ***Id.*** Regarding whether the trial court misapplied constitutional law, "our scope of review is plenary, and we review [its] legal determinations *de novo*." ***Commonwealth v. Butler***, ___ A.3d ___, ___, 2020 WL 1466299, at *3, Slip Opinion at 5 (Pa. 2020) (quoting ***Muniz***, 164 A.3d at 1195). Additionally, all lawfully enacted statutes carry a presumption of constitutionality, which the party seeking to evade their enforcement must rebut. ***See id.***

With this background in mind, we turn to the criminal statute and the two constitutional provisions at issue.

Mr. Santana pleaded guilty to violating Section 4915.1(a)(3) of the Crimes Code, failure to comply with a registration requirements – i.e., SORNA. The statute provides, in relevant part, "An individual who is subject to registration under 42 Pa.C.S. § 9799.13 ([SORNA]) commits an offense if he knowingly fails to . . . provide accurate information when registering under [SORNA]." 18 Pa.C.S.A. § 4915.1(a)(3). The parties agree that Mr. Santana knowingly failed to provide the police with accurate information when he did

not completely and timely update his SORNA-registration data.  Thus, the only element of offense in doubt is the first.  Was Mr. Santana, constitutionally speaking, "subject to registration under 42 Pa.C.S. § 9799.13" of SORNA?  *Id.*

Pursuant to Section 9799.13, someone must register under SORNA if "on or after the effective date of this section, [he] is required to register in a sexual offender registry in another jurisdiction . . . under a sexual offender statute in the jurisdiction where the individual is convicted and . . . [he] has a residence in this Commonwealth or is a transient."  42 Pa.C.S.A. § 9799.13(7)(i).  The parties agree that Mr. Santana satisfies the language of Section 9799.13(7)(i).  He is someone whom the General Assembly intended for SORNA's registration requirements to include.  However, he argues the federal and Pennsylvania constitutions prevent the Commonwealth from applying that section to him, thereby thwarting the legislature's intent.  If the constitutions nullify the registration-requirement element of 18 Pa.C.S.A. § 4915.1(a)(3), he claims the Commonwealth cannot sustain his conviction.

We agree that a prerequisite for guilt under 18 Pa.C.S.A. § 4915.1(a)(3) is that the individual be "subject to registration under 42 Pa.C.S. § 9799.13 ([SORNA])."  18 Pa.C.S.A. § 4915.1(a)(3).  If a person is not subject to register under SORNA, then he cannot be guilty of failing to register under Section 4915.1(a)(3) of the Crimes Code.

Mr. Santana attacks the applicability of 42 Pa.C.S.A. § 9799.13(7)(i) to him under the *Ex Post Facto* Clauses of both the federal and Pennsylvania

constitutions. The Constitution of the United States dictates that, "No state shall . . . pass any . . . *ex post facto* law . . . ." U.S. Const. art. I, § 10. Similarly, the Constitution of the Commonwealth of Pennsylvania mandates that "No *ex post facto* law . . . shall be passed." Pa. Const., art. I, § 17. The phrase "*ex post facto*" is Latin, literally meaning, "from a thing done afterwards," or, better stated, "after the fact."

Although Mr. Santana argues that the Commonwealth has violated both constitutions, he presents no **Edmunds** analysis and asserts no heightened protection under the state constitution. **See Commonwealth v. Edmunds**, 586 A.2d 887, 895 (Pa. 1991) (stating that, in our "New Federalism," there are "certain factors to be briefed and analyzed by litigants in each case hereafter implicating a provision of the Pennsylvania constitution," especially if the litigant asserts novel claims under the Pennsylvania constitution). Furthermore, in **Muniz**, only three Justices found Pennsylvania's *Ex Post Facto* Clause to afford greater protections than the federal *Ex Post Facto* Clause. **Compare Muniz**, 164 A.3d at 1223 (Lead Opinion), **with Muniz** at 1224 (Wecht, J., concurring). Thus, Mr. Santana's federal and state rights remain coextensive, and we analyze them together. **See**, **e.g.**, **Commonwealth v. Rose**, 127 A.3d 794, 798 n.11 (Pa. 2015).

Both constitutions restrain the Commonwealth from enforcing a law that it enacted after the fact, *i.e.*, after the event in question is complete. In other words, the legislature cannot criminalize or enhance the penalty for conduct

after that conduct has occurred. Constitutional freedom from after-the-fact legislation ensures that a person receives "fair warning" about what actions are criminal and what the punishments will entail, **before** acting. **Muniz**, 164 A.3d 1189, 1195.

In **Muniz**, a Pennsylvania trial judge convicted the defendant of two counts of indecent assault, which would have required him to register under Megan's Law III for ten years. **See** 42 Pa.C.S.A. § 9795.1 (expired). Muniz fled the Commonwealth prior to his sentencing, and, while he was outside Pennsylvania, the legislature replaced Megan's Law III with SORNA. Following Muniz's apprehension and extradition, the Pennsylvania trial judge imposed lifetime registration under SORNA. On appeal, this Court affirmed.

The Supreme Court of Pennsylvania reversed. It determined SORNA's registration requirements were punitive in nature for purposes of an *ex post facto* challenge. The High Court found "1) SORNA's registration provisions constitute punishment notwithstanding the General Assembly's identification of the provisions as nonpunitive; 2) retroactive application of SORNA's registration provisions violates the federal *Ex Post Facto* Clause; and 3) retroactive application of SORNA's registration provisions also violates the *Ex Post Facto* Clause of the Pennsylvania Constitution." **Muniz** at 1193. The

Court vacated the portion of Muniz's sentence ordering him to comply with SORNA's registration requirement. *See Muniz* at 1223.[6]

In the matter at bar, the trial court refused to follow *Muniz* for several reasons. First, it believed that *Muniz* applied only when someone commits a crime under Megan's Law III, absconds before sentencing, and then returns to Pennsylvania after SORNA's effective date. *See* Trial Court Opinion, 10/17/17, at 9.

Second, the court emphasized that Muniz had committed a sex offense in Pennsylvania, while Mr. Santana committed one in New York and was already required to register for life. As the trial court stated, "SORNA was already in effect when [Mr. Santana] relocated from New York to Pennsylvania, therefore providing him with constructive notice that he would be subject to SORNA upon his relocation to Pennsylvania." *Id.* Muniz, the trial court opined, never received such notice. *See id.* Thus, the trial court felt "constrained to narrowly construe *Muniz* and apply the Supreme Court's holding to only those cases where a person is subject to SORNA's registration requirements after having been convicted of a sex offense in Pennsylvania that occurred prior to its enactment." *Id.* at 10.

---

[6] After the *Muniz* Court issued its decision, the Commonwealth sought to appeal that case to the Supreme Court of the United States. That Court denied certiorari. *See Pennsylvania v. Muniz*, ___ U.S. ___, 138 S.Ct. 925 (2018).

Finally, it believed applying the *Ex Post Facto* Clauses as Mr. Santana asked would encourage sex offenders to relocate to this Commonwealth, "creating a 'safe haven' in Pennsylvania for sex offenders across the country." *Id.* at 11. The court did not "believe that this was the intent of the Supreme Court when it decided **Muniz**." **Id.**

None of these explanations distinguishes **Muniz** from the case before us. The Supreme Court of Pennsylvania recently explained its **Muniz** decision and viewed that precedent differently than the trial court did here. The High Court said, "In **Muniz**, we considered whether the registration requirements of SORNA constituted criminal punishment such that their retroactive application violated the *Ex Post Facto* Clauses of the United States and Pennsylvania Constitutions." **Butler**, ___ A.3d at ___, 2020 WL 1466299, at *5, Slip Opinion at 8. "Moreover . . . we considered the [**Kennedy v. Mendoza–Martinez**, 372 U.S. 144 (1963),[7]] factors and found SORNA

_____

[7] In **Kennedy v. Mendoza–Martinez**, 372 U.S. 144 (1963), the Supreme Court of the United States announced a seven-factor test to determine whether a statute is so punitive as to negate a legislature's expressed intent that the statutory scheme be civil or regulatory. Those factors are "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." **Mendoza-Martinez**, 372 U.S. at 168-69 (footnotes omitted).

imposed an affirmative disability or restraint upon offenders due to the onerous in-person reporting requirements for both verification and changes to an offender's registration." *Id.* The *Muniz* Court determined "that SORNA's requirements were analogous to historical forms of punishment, specifically holding the statute's 'publication provisions — when viewed in the context of our current Internet-based world — to be comparable to shaming punishments' and the mandatory conditions placed on registrants to be akin to probation." *Id.* (quoting *Muniz* at 1213).

Far from suggesting that *Muniz* applies only to defendants who commit their crimes under Megan's Law III and flee the Commonwealth, the *Butler* Court clarified that the result in *Muniz* stemmed from the text of SORNA and the punishment that it inflicts upon registrants who are not "sexually violent predators."[8] The *Butler* Court's reading of *Muniz* coincides with the broader application that Mr. Santana asserts.

Indeed, this broader application reflects the reality that *ex post facto* challenges **always** prompt an "as applied" analysis. A law can only be *ex post facto* "as applied" to a given defendant's prior action. Otherwise, there would be no basis for an *ex post facto* claim. Unlike due-process or equal-protection challenges, where a litigant may attack a statute as either facially unconstitutional or unconstitutional as applied, if a litigant raises an *ex post*

---

[8] The Commonwealth does not argue that Mr. Santana is a "sexually violent predator" under SORNA; therefore, we do not address the issue here.

*facto* claim, he necessarily challenges the law "as applied" to himself. Thus, the trial court placed irrelevant emphasis on the first sentence of ***Muniz*** – *i.e.*, that the Supreme Court "granted discretionary review to determine whether Pennsylvania's SORNA ***as applied retroactively to appellant Jose M. Muniz*** is constitutional under the *Ex Post Facto* Clauses of the United States and Pennsylvania Constitutions." Trial Court Opinion, 10/17/17, at 9 (quoting ***Muniz*** at 1192) (punctuation omitted) (emphasis by trial court). Muniz challenged SORNA as it applied to him, because that was the only form that his *ex post facto* claim could take.

We also find the Commonwealth's and trial court's reliance on the facts that Mr. Santana committed his 1983 sexual offense in New York and that he had to register there for life to be misplaced. To explain this error, we must return to the first case to apply the federal *Ex Post Facto* Clause, ***Calder v. Bull***, 3 U.S. 386 (1798).

In ***Calder***, Chief Justice Chase identified four categories of laws that violate the *Ex Post Facto* Clause. They are:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. ***Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, <u>when committed</u>.*** 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Calder*, 3 U.S. at 390 (emphasis added).

Relying on *Calder* and its progeny, the *Muniz* Court observed:

> "two critical elements" must be met for a criminal or penal law to be deemed *ex post facto*: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29, 101 S.Ct. 960 (footnote omitted). As such, "only those laws which disadvantage a defendant **and** fall within a *Calder* category are *ex post facto* laws and constitutionally infirm." ***Commonwealth v. Young***, 536 Pa. 57, 637 A.2d 1313, 1318 (1993) (emphasis in original).

*Muniz,* 164 A.3d at 1195-96 (emphasis in original).

As in *Muniz*, Mr. Santana committed his underlying, sexual offense prior to SORNA's 2011 enactment and effective date of December 20, 2012. While Muniz only faced a civil, collateral consequence of ten years of registration in Pennsylvania when he committed his 2007 crime, Mr. Santana faced absolutely **no** registration requirement in Pennsylvania when he committed his 1983 crime. Thus, when Mr. Santana acted in 1983, he had no notice that Pennsylvania would impose the punitive, registration requirements of SORNA or otherwise punish him for failing to comply.[9]

Nevertheless, 28 years later, Pennsylvania imposed SORNA's punitive, registration requirements upon him, and the trial court upheld this after-the-fact punishment as constitutional. However, *Muniz* taught that SORNA's

---

[9] Whether Pennsylvania has jurisdiction and/or authority to punish Santana with SORNA's punitive, registration requirements for a crime that occurred in another state presents another interesting question under the Due Process Clause of the Fourteenth Amendment. Santana did not raise that issue here.

registration requirements constitute after-the-fact punishment for crimes committed before December 20, 2012. By increasing Pennsylvania's penalty for Mr. Santana's 1983 crime from nothing to something, the Commonwealth disadvantaged Mr. Santana **in this Commonwealth** on December 20, 2012, when SORNA took effect. Because Mr. Santana's crime occurred before that date, under **Muniz**, **Weaver**, and **Calder**, applying SORNA to him violates the *Ex Post Facto* Clauses. On the day he committed his underlying rape, Pennsylvania had no law in effect to punish him, if he had immediately moved here. Thus, the Commonwealth is forever barred from punishing him for that offense, notwithstanding his New York sentence, including the imposition of civil, regulatory consequences.

The trial court found no constitutional violation, because Mr. Santana had to register for life in New York and, in 2015 when he moved to Pennsylvania, he had notice of SORNA's registration requirements. These were red herrings. The trial court diverted its attention away from the triggering event of an *ex post facto* review – when the criminal act **occurred.** Instead, the trial court fixated upon a constitutionally irrelevant moment, *i.e.*, the date when Mr. Santana moved to Pennsylvania. The trial court's timeline violates Supreme Court precedent, dating all the way back to **Calder**, which directs us to analyze *ex post facto* claims from the date "**when the crime was committed.**" **Muniz**, 164 A.3d at 1195 (emphasis added).

Moreover, the trial court's application of the *Ex Post Facto* Clauses sets a dangerous precedent. Under its analysis, the Commonwealth may impose

any punishment it desires against someone with a criminal record who moves to Pennsylvania.  To illustrate, imagine if the General Assembly enacted the following statute:

> Any person moving to Pennsylvania who has one or more felony convictions in a foreign jurisdiction shall serve one year of incarceration in the county correctional facility where such person now resides, followed by a year of probation. Failure to serve the incarceration term and/or successfully compete probation is a felony of the first degree.

Based on the argument of the Commonwealth and the logic of the trial court, this statute would constitutionally apply to someone who committed an out-of-state felony prior to its enactment.  After all, the individual would have had notice that the law "was already in effect when he relocated . . . to Pennsylvania, therefore providing him with constructive notice that he would be subject to [the law] upon his relocation to Pennsylvania."  Trial Court Opinion, 10/17/17, at 9.  However, he could not have possibly known about this additional, Pennsylvania punishment when he committed his felony in another state.

The state and federal *Ex Post Facto* Clauses would surely disallow the retroactive incarceration and probation for out-of-state, criminal acts under that hypothetical statute.  Those same clauses just as surely prohibit the retroactive imposition of SORNA's punitive, registration requirements for Mr. Santana's out-of-state crime.

Under **Muniz**, Pennsylvania could not apply SORNA to Mr. Santana if he had committed his 1983 crime in this Commonwealth.  Likewise, it may not

apply SORNA to the 1983 crime he committed **outside** this Commonwealth. Neither the Commonwealth nor the trial court may treat in-state and out-of-state crimes differently under the *Ex Post Facto* Clauses. Those clauses do not focus on **where** crimes occurred; they focus on **when** crimes occurred. Mr. Santana has as much of a constitutional right to be free from *ex post facto* laws that penalize him for pre-existing crimes that occurred outside this Commonwealth as he does from *ex post facto* laws that penalize him for pre-existing crimes that occurred inside this Commonwealth.

Finally, neither the trial court's policy predilections nor its attempt to divine the intent of the Supreme Court of Pennsylvania supersedes Mr. Santana's constitutional liberty in this regard. As mentioned above, the trial court worried that, if the *Ex Post Facto* Clauses barred the Commonwealth from requiring Mr. Santana to register under SORNA, then Pennsylvania would become a "safe haven" for registered sex offenders from across the nation. Trial Court Opinion, 10/17/17, at 11.

While the trial court's concern may be laudable, consequentialism has no place when interpreting constitutional texts. For it is the will of the Framers that courts strive to ascertain when construing our foundational documents, not our own, or even the will of supreme court justices. Whether applying the *Ex Post Facto* Clauses in Mr. Santana's case will benefit out-of-state, registered sex offenders is **irrelevant** to the judicial injury. "[S]uch questions as 'Who wins?' . . . 'Will this decision help future defendants?' . . . are appropriately asked by those who write the laws, but not by those who apply

- 18 -

them . . . In sum, once the meaning is plain, it is not the province of a court to scan its wisdom or its policy." Antonin Scalia, J., READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS § 61 at 352-353 (2012). Hence, the trial court's personal worry that enforcing the *Ex Post Facto* Clauses might invite out-of-state offenders to move to Pennsylvania is unpersuasive. It is the prerogative of the legislature and the People to amend the statutory law and/or the constitutions to rectify any negative consequences of a ruling in favor of Mr. Santana.[10]

## IV.  Conclusion

To recap, the trial court's *ex post facto* application has no support in the language of the two constitutions or precedent. Pennsylvania impermissibly penalized Mr. Santana under SORNA's registration requirement for a crime that pre-dated SORNA by 30 years. The *Ex Post Facto* Clauses forbids this state action. Mr. Santana's registration requirement under SORNA was an after-the-fact punishment and, therefore, unconstitutional. Accordingly, he had no duty to comply with those requirements and his conviction for ignoring

---

[10] The political branches have already responded to **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), *cert. denied* sub nom. **Pennsylvania v. Muniz**, ___ U.S. ___, 138 S.Ct. 925 (2018), by amending Pennsylvania's sex-offender-registration statutes. To address *ex post facto* concerns, the new law divides the provisions into distinct subchapters — Subchapter H, for offenders whose underlying conduct occurred after December 20, 2012, SORNA's effective date, and Subchapter I, for offenders required to register under former versions of Megan's Law. 42 Pa.C.S. §§ 9799.11(c), 9799.52. Whether the Commonwealth may constitutionally subject Mr. Santana to SORNA's registration provisions under Subchapter I and subsequent criminal prosecution for noncompliance with that subsection is not before us, so we express no opinion on that question.

them, under 18 Pa.C.S.A. § 4915.1(a)(3), was a manifest injustice and must be overturned.

Judgment of sentence vacated; conviction reversed; Mr. Santana discharged from custody.

Judges Bowes, Shogan, Lazarus and Murray join the opinion.

Judges Olson and Nichols concur in result.

Judge Stabile files a dissenting opinion in which Judge Dubow joins.

Judge Dubow notes dissent.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/20/2020*